[L. A. No. 9917. In Bank.—December 10, 1929.]

ETHEL M. STAPLES, Appellant, v. LAURA HAWTHORNE et al., Respondents.

Merriam, Rinehart & Merriam for Appellant.

C. W. Byrer for Respondents.

CURTIS, J.—Plaintiff brought this action for the specific performance of an oral agreement alleged to have been made by Clymena W. Hosmer with the father of the plaintiff, and to enforce a trust in and to all property owned by said Clymena W. Hosmer at the time of her death, and which

by the terms of her last will she had bequeathed and devised to the defendants. In her complaint, plaintiff alleged that during her infancy, her mother having died, her father gave her into the care and custody of N. H. Hosmer and his wife, the said Clymena W. Hosmer, upon the express though verbal agreement entered into by the Hosmers with plaintiff's father whereby N. H. Hosmer and Clymena W. Hosmer agreed to take plaintiff into their home and to care for her and treat her as their own child, and that upon their death they would will to her their entire estate. She further alleged the death of N. H. Hosmer; that he left a last will by which he devised and bequeathed to his wife, Clymena W. Hosmer all of his property; that the said Clymena W. Hosmer died leaving a last will and testament by which she attempted to dispose of the property belonging to her, including that received by her from her husband, as follows: To the plaintiff $500, to Paul C. Staples, plaintiff's husband, $500; to the defendant Alfred S. Copps the sum of $500, to the defendant, Arthur M. Copps the sum of $200, and the residue of said estate in equal shares to the defendants Laura E. Hawthorne, Lelia B. Morse, Angie Williamson and Frank S. Morse.

The evidence upon behalf of plaintiff was to the effect that plaintiff was born in Sierra Madre, California; that her mother was then in poor health, and that the plaintiff was cared for by the Hosmers in their home in Sierra Madre both before and after the death of the mother of the plaintiff, which occurred a few months after plaintiff's birth. A short time after the death of plaintiff's mother and in the year 1885 her father took her from the home of the Hosmers at Sierra Madre and back to the state of Maine, where he left her with her maternal grandmother, Margaret Twycross, in Cedar Grove, Maine. About a year or so thereafter the Hosmers made a trip to Maine and visited the home of Mrs. Twycross, when and where they prevailed upon plaintiff's father and her said grandmother to permit them, the Hosmers, to take the plaintiff back with them to California. Immediately thereafter the Hosmers left for California, and from that time on until her marriage the plaintiff lived with the Hosmers in their home at Sierra Madre, who treated her in all respects as their own child. The principal witnesses on behalf of the plaintiff were her two

aunts, S. Lillie Twycross and Edith L. Twycross. These witnesses were sisters and their evidence was given by means of depositions. They testified that they were sisters of plaintiff's mother, and that they resided with their mother, Margaret Twycross, who was also the grandmother of the plaintiff, at Cedar Grove, Maine, at the time that plaintiff's father, James W. Bower, brought plaintiff to Maine and left her with her said grandmother; that plaintiff was then about two years of age and that she lived with her grandmother about one year; that in 1886 N. H. Hosmer and his wife, Clymena W. Hosmer, came to their home in Cedar Grove. We will now quote from the testimony of Edith L. Twycross, whose testimony is in all essential features the same as that of S. Lillie Twycross. ''I was present and heard the discussion and agreement which resulted in Mr. Bower and my mother consenting that Mr. and Mrs. Hosmer should take my niece, Ethel May Bower, to be a daughter to them. My sister, Harriet Twycross Bower, and her little daughter Ethel had lived in the Hosmer home in Sierra Madre, California, for some time before my sister's death; and Mr. and Mrs. Hosmer had become much attached to the child, having no children of their own, and after Ethel's father, Mr. Bower, had brought her here and left her with her grandmother they missed her in the home so much, and had such a longing for her to take the place of a daughter to them, that they came all the way from California to get the consent of her father and grandmother to their taking the child for their own. They told us these things and how much of brightness and joy Ethel had already brought to them and how happy it would make them to have her for their own and they promised that if she was given to them they would give her a good home and their hearts' deepest affections and a good education and that they would leave all their property to her when they died. These matters were all talked over a number of times while Mr. and Mrs. Hosmer were visiting in our old home place on the hill a year or more after Ethel was brought here. Those present were my mother, Mrs. Margaret O. Twycross; Ethel's father, James Bower; Mr. and Mrs. N. H. Hosmer, little Ethel May Bower, my sisters, Lydia, Alice and Lillie, and myself.'' This witness testified, as did her sister, S. Lillie Twycross, that as a result

of the visit of the Hosmers to the home of the plaintiff's grandmother and the conference held there between the Hosmers and plaintiff's relatives, the Hosmers returned to California with the plaintiff, where she lived in the Hosmers' home as their own daughter.

There was also evidence from other witnesses that the Hosmers had at different times made admissions to the effect that they had agreed to make their will in plaintiff's favor. There was no evidence expressly contradicting the evidence given by the aunts of the plaintiff, the Twycross sisters, nor that given by the other witnesses who testified as to said admissions. That is, the defendants produced no witness who testified that the Hosmers did not agree to make their will in plaintiff's favor as testified to by the Twycross sisters. Nor were either of these witnesses impeached in the manner provided by any section of the Code of Civil Procedure. The trial court, nevertheless, rejected the testimony of the Twycross sisters as to the agreement of the Hosmers to make their will in plaintiff's favor, and while it found the facts in all other respects as testified to by them, it found that it was not true that any agreement had been entered into whereby the Hosmers agreed ''to bequeath or devise or to otherwise give or transfer or convey all or any part of their property to plaintiff.'' Judgment based upon these findings was rendered in favor of the defendants and the plaintiff has appealed therefrom.

The principal ground upon which the plaintiff bases her appeal is that the evidence is insufficient to support the findings, and particularly the finding of the trial court that no agreement had been made by the Hosmers that they would make a will in favor of the plaintiff whereby they would bequeath and devise to the plaintiff their property.

■ It is well settled by the decisions of this court that any agreement to make a will in favor of a certain person is valid and binding upon the person making said agreement and that upon the death of the latter said agreement will be enforced against those who have succeeded to the property of said decedent contrary to the terms of said agreement. (*Owens* v. *McNally,* 113 Cal. 444 [33 L. R. A. 369, 45 Pac. 710]; *Rogers* v. *Schlotterback,* 167 Cal. 35 [138 Pac. 728]; *Monsen* v. *Monsen,* 174 Cal. 97 [162 Pac. 90]; *Steinberger* v. *Young,* 175 Cal. 81 [165 Pac. 432]; *Wolfsen*

v. *Smyer,* 178 Cal. 775 [175 Pac. 10].) There are certain limitations upon this rule noted in these authorities, but it is not necessary to mention them here. ▮ Prior to the amendment in 1905 and 1907 of our codes (Civ. Code, sec. 1624, and Code Civ. Proc., sec. 1973), it was not required that such agreement should be in writing. The agreement involved in the present action was claimed to have been made by the Hosmers with plaintiff's father long prior to the amendments of the code just referred to, and, therefore, its validity is not affected by them. (*Monsen* v. *Monsen, supra.*) There is, therefore, nothing in the nature of the agreement relied upon by the plaintiff which would preclude or prevent its enforcement if the same had been established by satisfactory and legal evidence.

▮ It is the contention of the plaintiff that this has been done. Her position is that the evidence of her aunts, the Twycross sisters, corroborated by those witnesses who testified to admissions made by the Hosmers, stands unimpeached and uncontradicted, and, therefore, the trial court was in duty bound to accept it and to make its findings and render judgment in accordance with said evidence.

Cases of this type have frequently been before this court. *Blanc* v. *Connor,* 167 Cal. 719 [141 Pac. 217], belongs to this class. In the opinion rendered therein and on page 722 of 167 Cal., *supra,* this court said: ''It is asserted that this is a class of cases sometimes arising in fraud and abounding in perjury, and although disclaiming any thought that the instant case is so tainted, counsel contend that the court was justified in scrutinizing the testimony very carefully and refusing to accept it as proof of the contract unless it presented a very strong showing that the agreement was made substantially as alleged. It is true that courts are very slow to overturn findings of fact made by a jury and *a fortiori* those made by a court acting without a jury, even when contrary statements which are uncontradicted appear in the testimony of witnesses. The rule was thus stated in *Davis* v. *Judson,* 159 Cal. 128 [113 Pac. 150], in which Mr. Justice Lorigan, delivering the opinion of this department, said: 'While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most

positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness' own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying credence, unless it appears that there are no matters or circumstances which at all impair its accuracy.' In many jurisdictions such contracts as that here asserted are scrutinized with the greatest care and they are only sustained upon the most convincing proof. It is unnecessary to review the many authorities upon this subject from other jurisdictions. In this state the rule is well established and has been ever since the decision of *Owens* v. *McNally,* 113 Cal. 444 [33 L. R. A. 369, 45 Pac. 712], which has been reaffirmed every time a similar case has come to this court on appeal.'' The same rule is enunciated in the following decisions of this court: *Cox* v. *Schneer,* 172 Cal. 371 [156 Pac. 509]; *Travis Glass Co.* v. *Ibbetson,* 186 Cal. 724 [200 Pac. 595]; *Wilson* v. *Wood,* 69 Cal. App. 552 [231 Pac. 1010, 1012].

In *Wilson* v. *Wood, supra,* this court in denying a petition for transfer and hearing herein used the following language which aptly states the rule applicable to the facts in the present action: ''It is true that the testimony of appellant's father as to the terms of the contract entered into between him and the Woods was not expressly contradicted by the testimony of any witness. But there are various facts and circumstances in evidence which tended legitimately to controvert this testimony and other facts and circumstances which had a tendency to impeach its credibility. Under these circumstances the trial court was legally justified in finding that it was not true that the father of plaintiff surrendered her to the Woods and consented to her adoption by them upon any other understanding or agreement than that appearing in the written contract of adoption.''

In the present action we think there is ample evidence of facts and circumstances which tended to impeach the credibility of the evidence relied upon by the plaintiff. Among these facts and circumstances were those brought out by the testimony of Vernon Willey. He testified that he met Mr. and Mrs. Hosmer at the time of their visit to the state of Maine in 1887, and that he accompanied them on their trip home to California during that year, and that the plaintiff did not come to California with them on that trip. Immediately on his arrival in California he went with his uncle and aunt to their home in Sierra Madre and lived there continuously thereafter and worked as chore boy for a period of about two and one-half years. He testified that when they arrived at the Hosmer home the plaintiff was not there, but that some three or four weeks after their arrival he saw plaintiff for the first time and that as near as he could recollect she was brought to the Hosmer home by her father, James Bower. The Misses Twycross testified that it was in 1886 when the Hosmers took the plaintiff from her grandmother's home and brought her to California, and the plaintiff in her original complaint alleged that it was in September, 1886, that the agreement was made between James Bower and the Hosmers and that the plaintiff was given by her father thereafter to the Hosmers. During the trial, however, the plaintiff amended her complaint, changing the year 1886 to 1887. It appears to be conceded by all parties hereto that the Hosmers made only one trip back to Maine during the years 1886 and 1887 and that said trip was made in 1887. Therefore, if plaintiff was brought back by them it must have been in the year 1887 and not 1886. We do not attach any undue importance to the discrepancy in the evidence of the Twycross sisters as to the year the Hosmers were at their mother's home. They may well have remembered the event and what transpired on that occasion and still may not have remembered the exact year in which the event took place. Particularly would this be so when they were testifying some thirty-seven years after the time of the occurrence which they were relating. But we do attach importance to the fact testified to by Vernon Willey that plaintiff was not brought by the Hosmers in 1887 when they returned from their trip east; that she was not in the

Hosmer home in Sierra Madre when he arrived there with his uncle and aunt and that he did not see her until three or four weeks thereafter when, to the best of his recollection, she was brought to the Hosmer home by her father, James Bower. If this testimony is true, then it is in direct conflict with the whole theory of plaintiff's case. The Twycross sisters testified that plaintiff's father was to meet the Hosmers "somewhere en route to California and accompany them to California and give Ethel to them to take the place of a daughter in their home." Plaintiff testified that while she was only three years old at the time, she remembered the trip taken with Mr. and Mrs. Hosmer back to California, and her uncle, Samuel R. G. Twycross, testified that he was living at the Hosmer home in 1886 or 1887 when the Hosmers returned from their eastern trip and that they brought the plaintiff back with them. The testimony of Vernon Willey is corroborated by that of the witness, Rena Hawthorne. She testified that she was fourteen years of age at the time the Hosmers went east in 1887; that she went with her father and mother to live in the Hosmer home during the absence of Mr. and Mrs. Hosmer on their trip to the state of Maine made during that year; that she was present when the Hosmers returned from this trip; that Vernon Willey was with them, but that the plaintiff was not. This witness testified that she remained with the Hosmers a day or two after their return before she went with her parents back to their home in Compton, California, and that she did not see or meet the plaintiff until her next visit to the Hosmers, which was some months after they had returned. The evidence given by Vernon Willey and Rena Hawthorne, if believed by the trial court, was sufficient to justify the trial court not only in rejecting the evidence of plaintiff and her uncle, Samuel R. G. Twycross, but in seriously questioning plaintiff's whole case.

Then, again, the further evidence given by the plaintiff herself was sufficient to warrant the trial court in doubting the validity of her claim. After the death of Mrs. Hosmer the will already referred to was found. She filed the same for probate, together with her petition asking for her appointment as administratrix with the will annexed of Mrs. Hosmer's estate. In this petition she designated herself as the adopted daughter of the deceased. She was ap-

pointed administratrix, acted as such for over a year, and even had prepared for filing her final account and petition for distribution of said estate according to the terms of said will, before she brought this action. In the meantime she met and advised with various of the beneficiaries under the will and particularly with Laura E. Hawthorne who came to California to look after the interests of the residuary legatees. Not only did she not make any claim to the estate of said deceased by virtue of the agreement which she claims was made by her father with the Hosmers, but she actually leased some of the property of the estate which had been by the will given to the residuary legatees, and paid them rent, during the administration of the estate. During this time and up to the time shortly before the filing of her final account and petition for distribution, she made no claim whatever to any person that she was entitled to any portion thereof by reason of said agreement. This claim was then made to the attorney of the estate, who testified that, "She intimated that she was going to make a claim for the entire estate." This was but a few days before the final account and petition for distribution was filed. They were filed May 13, 1924, and the petition for probate of Mrs. Hosmer's will was filed March 17, 1923. She attempts to explain her action in failing to assert any right to the estate by virtue of the agreement by stating that she told the attorney for the estate all about the agreement at the time he was employed to probate the will of Mrs. Hosmer. The attorney denied, however, that any such statement had been made to him or that plaintiff made any claim to Mrs. Hosmer's estate by virtue of the agreement until about the date of the final account and petition for distribution was filed. She admitted that her father in 1912 had told her that the agreement had been made by him with the Hosmers that they were to leave her all their property at their death. She, therefore, had full knowledge of her rights at all times since and for some time prior to the death of Mrs. Hosmer. We must assume in support of the judgment that the trial court accepted the testimony of the attorney of the estate that plaintiff had made no statement to him regarding her claim to the property of the estate by virtue of the agreement and rejected the evidence of the plaintiff that she had informed the at-

torney all about said agreement. Her actions, therefore, for more than a year after the death of Mrs. Hosmer were inconsistent with her claim that she was entitled to the whole or any part of the estate by virtue of the agreement made by her father with the Hosmers.

From these actions of the plaintiff subsequent to the death of Mrs. Hosmer the trial court may well have concluded that the claim which the plaintiff was making was simply an afterthought on her part and that it had no real merit in point of fact. The evidence of plaintiff's actions and conduct just recited would justify such a conclusion.

"In cases of this kind where one of the contracting parties has died and his voice cannot be raised to contradict statements as to the terms of an agreement and of the performance had thereunder, necessarily the trial court is led to base its conclusion many times upon the testimony as to the acts of the parties and all of the circumstances surrounding them. This evidence of conditions and circumstances may oftentimes illustrate well the truth of the old saying that 'actions speak louder than words.'" (*Pugh* v. *Bell*, 21 Cal. App. 530, 534 [132 Pac. 286, 288].)

The words just quoted, we think, aptly apply to the present action. It is not reasonable to suppose that the plaintiff, if she considered that she was entitled to the whole of the estate of Mrs. Hosmer, valued at over $27,000, would have undertaken to administer said estate under a will of the decedent which gave to her only the sum of $500 and to her husband a like sum, and that she would have carried on said administration until said estate was ready to be distributed under the terms of the will, without intimating in any manner that she had a claim to said estate over and above that which she took under said will. These acts of the plaintiff, and her dealings with the residuary legatees related above, were so out of harmony with the claim which she now asserts that they furnished to the trial court sufficient legal grounds for rejecting all evidence in her favor, bearing upon the making of the asserted agreement between her father and the Hosmers. With the evidence rejected by the trial court, its negative finding that no such agreement had been made was the only finding that would have been justified or supported by the evidence in the case.

■ The plaintiff further excepts to certain rulings of the trial court striking out portions of the deposition of Edith L. Twycross on the ground that the portions stricken out were mere conclusions of law. These exceptions are not well taken. Unquestionably the portions of the deposition stricken out were conclusions of law rather than statements of fact, and the action of the trial court thereon is not subject to criticism. But even if the court erred in striking out portions of said deposition, the plaintiff was not prejudiced thereby. The main part of said deposition was admitted in evidence and the essential facts, which were sought to be proved by said deposition, were fully covered by the portion thereof before the court. The portions stricken out were principally repetitions of what the witness had before testified to in somewhat different language. At most the stricken portions were simply cumulative.

■ Plaintiff further contends that that portion of the judgment in favor of the defendants, Alfred S. and Arthur M. Copps, should be reversed. In this claim we think she is correct, as these defendants each filed an answer in which he admitted that all of the allegations of the complaint were true and stipulated that judgment might be entered in said action as prayed for. This matter is of slight consequence to the plaintiff or to anyone else, as it appears that she holds written assignments by the Copps of all their interest in said estate. But the question of making these assignments is not within the issues of the action and the plaintiff is entitled upon the pleadings to judgment against the Copps as prayed for in her complaint. But neither the stipulation of the Copps nor the judgment in plaintiff's favor against them can in any way affect the right of plaintiff as to the remaining defendants in the case.

The judgment appealed from is affirmed as between the appellant and respondents herein. As against the defendants, Alfred S. Copps and Arthur M. Copps, it is so modified that plaintiff may have judgment against them as prayed for.

Richards, J., Seawell, J., Waste, C. J., Langdon, J., Shenk, J., and Preston, J., concurred.