[Civ. No. 13310. First Dist., Div. One. May 2, 1947.]

JOHN B. SYLVESTER, Plaintiff and Appellant, v. W. J. KIRKPATRICK, Respondent; MARY NUNNES MARTIN et al., Cross-Defendants and Appellants.

John H. Machado and Robley E. Morgan for Appellants.

R. V. Bressani, G. D. Schilling and Edwin J. Owens for Respondent.

WARD, J.—John B. Sylvester, plaintiff and cross-defendant, and Mary Nunnes Martin Almeida and John Almeida, cross-defendants, appeal from the judgment for W. J. Kirkpatrick, defendant and cross-complainant, quieting title to real property. Hereafter the parties will be referred to as Sylvester, the Almeidas, and Kirkpatrick.

Sylvester's complaint alleged his ownership of certain real property in which Kirkpatrick claimed title. A prayer for damages was based on allegations that through the latter's wrongful acts in slandering Sylvester's title to such property, Sylvester had been damaged in the sum of $1,500.

The answer to the complaint denied generally Sylvester's allegations of title and the slander thereof, and by way of separate defense alleged that "at all times in the Complaint mentioned, Mary Nunnes Martin, now known as Mary Nunnes Martin Almeida, and John Almeida, were the owners of the real property described in the Complaint. That on the 17th day of June, 1939, in the Municipal Court of the City and County of San Francisco, State of California, in Action No. 130314, Defendant W. J. Kirkpatrick, recovered judgment against said Mary Nunnes Martin, now known as Mary Nunnes Martin Almeida, and John Almeida, in the sum of $1061.76, debt, $378.35 interest, and $7.50 costs." The defense then alleged that execution was issued thereon on May 6, 1944; that the property was levied upon; that it was advertised that the constable would "on June 3, 1944, sell all right, title and interest and estate of said Mary Nunnes Martin now known as Mary Nunnes Martin Almeida, and John Almeida" at public auction to satisfy said execution and judgment; and that Kirkpatrick purchased the property in question at such sale receiving a certificate of sale which was duly recorded. It is further alleged that the Almeidas "for the express purpose of concealing their assets and to prevent defendant from satisfying his judgment aforesaid, conspired

with plaintiff and caused the deed to the real property described in the Complaint to be recorded in Plaintiff's name in an effort to have it appear that Plaintiff was purchasing the same and/or was the owner thereof; that at no time was plaintiff the purchaser of said property or the owner thereof, nor did he advance or pay any part of the purchase price thereof or have or claim any interest therein; . . . that the making of the deed to said property and causing the same to be placed in the name of plaintiff was fraudulent as to defendant and done for the sole purpose of defrauding defendant and concealing the true ownership of said property and secreting the assets of said judgment debtors.''

Kirkpatrick's cross-complaint joined the Almeidas with Sylvester as cross-defendants. Allegations similar to those which appear in the answer are followed by a prayer that Sylvester take nothing by his complaint; that the cross-defendants be enjoined from asserting any claim or demand to said property, and that Kirkpatrick be entitled to·the possession thereof.

The Almeidas answered the cross-complaint by filing a disclaimer of ''all right, title, or interest of whatsoever kind or extent in or to any or all of the premises described in cross-complainant's cross-complaint on file herein,'' and prayed judgment for costs against Kirkpatrick.

Judgment, entered in favor of Kirkpatrick, decreed that Sylvester never had any interest in the property and that the Almeidas ''do not now have, and ever since June 3, 1944, have not had any right, title, estate or interest'' in the property. All defendants were restrained from asserting any claim or demand in the property adverse to the interest of Kirkpatrick. After the judgment was entered it was modified by striking therefrom a provision that Kirkpatrick was entitled to possession from June 3, 1944, leaving it to read: ''. . . Kirkpatrick since June 3, 1944, has been, and now is, the sole owner in fee of the real property . . .'' Kirkpatrick recovered costs against Sylvester. Motions for a new trial were denied.

On appeal, Sylvester contends that ''The findings and the judgment based thereon are not supported by the evidence'' and that the judgment ''is against law.'' The Almeidas contend that the judgment is against law in enjoining them from asserting any claim to the property, and in not proportioning the interests of the record and beneficial owners, assuming that the property was purchased as found in the court's

findings; and that the court committed prejudicial error in requiring John Almeida to testify.

The trial court found that on June 17, 1939, a municipal court judgment was rendered in favor of Kirkpatrick against the Almeidas for the sum of $1,061.76, plus costs and interest; that thereafter execution was issued thereon; that on June 3, 1944, the real property described in the pleadings was sold at public auction to Kirkpatrick who received a certificate of sale which was recorded June 16, 1944; and that said property has never been redeemed.

As to the question of the ownership of the property prior to June 3, 1944, the trial court found "that the deed conveying said property to, and the causing of the same to be placed of record in the name of, plaintiff and cross-defendant John B. Sylvester, was fraudulent as to defendant and cross-complainant W. J. Kirkpatrick and done for the sole purpose of defrauding defendant and cross-complainant W. J. Kirkpatrick and concealing the true ownership of said property by, and secreting the assets of, said cross-defendants Mary Almeida and John Almeida, judgment debtors; that all negotiations and arrangements for the purchase of said property including the closing of the sale thereof, were had and made by cross-defendants Mary Almeida and John Almeida, and that the consideration paid on account of the purchase price of said real property was advanced and paid by cross-defendants Mary Almeida and John Almeida, from their own funds, and that plaintiff and cross-defendant John B. Sylvester paid no part of the purchase price of said real property nor did he give or advance anything of value therefor, and that all subsequent payments on account of any unpaid portion of the purchase price, as well as all taxes and insurance premiums, were paid by cross-defendants Mary Almeida and John Almeida, . . . who, since the purchase by them of said real property and delivery of deed therefor in the name of plaintiff and cross-defendant John B. Sylvester, have resided on said property; that cross-defendants Mary Almeida and John Almeida intended to and had arranged for the execution, delivery and recordation of deed conveying title to said real property to them on or about September 5th, 1941, in joint tenancy, but when they ascertained that an abstract of the judgment rendered against them in favor of defendant and cross-plaintiff had been recorded in the office of the County Recorder of Santa Clara County prior to the date of

the contemplated recording of said joint tenancy deed, cancelled their instructions and directions to have said joint tenancy Deed executed by the then owner and seller of the property and arranged for and conspired with plaintiff and cross-defendant John B. Sylvester as hereinbefore set forth to have said Deed placed of record in his name in pursuance of said fraud and for the purpose of concealing the identity of the real owners of said property.'' The court further found that the disclaimer filed by the Almeidas was ''a sham and not made or filed in good faith, but made and filed for the purpose of carrying out and furthering the conspiracy and fraud and attempt to conceal and secrete assets. . . .''

The evidence shows that on August 30, 1941, the Almeidas entered into a contract to purchase the property herein involved—improved with a dwelling house—from the previous owners. That agreement shows that the agreed purchase price was $2,800, with $290 being paid as an initial cash payment. The Almeidas were to pay an additional $110 by September 21, 1941, and were to give a note for the remaining $2,400, secured by a deed of trust. They were to pay $24 monthly thereon until the balance was satisfied. There is no dispute concerning the fact that at the time the foregoing contract was made, Kirkpatrick was a judgment creditor of the Almeidas under a judgment taken against them in the San Francisco Municipal Court on June 17, 1939—apparently for $1,061.76, $378.35 interest, and $7.50 costs; nor the fact that an abstract of that judgment had been recorded in Santa Clara County.

On September 5, 1941, the Almeida note and deed of trust were deposited with an escrow company. On September 16, 1941, the deed from the previous owner to the Almeidas was placed with the escrow. Witness S. T. Pereira, an official of the escrow company, testified that before the escrow was closed, the Almeidas were told that the title company would not insure the title without showing the Kirkpatrick judgment lien because the ''abstract of judgment appeared on the run-down.'' The Almeidas then took back the escrow file and receipted for the documents, namely, their note and deed of trust.

By letter dated September 20, 1941, Sylvester sent to the escrow company his note and deed of trust for the purchase of the property. His letter shows that he was taking credit for $290 cash, which amount was admittedly previously paid

by the Almeidas. On September 24, 1941, the seller author-ized a conveyance to Sylvester instead of to the Almeidas. That the deed from the former owner to Sylvester was the deed prepared for the Almeidas—but with Sylvester's name substituted—is seen from the fact that the deed to Sylvester, a single man, is a "Joint Tenancy Deed," bearing the Sep-tember 5th date. It was recorded September 24, 1941.

Under date of September 20, 1941, Sylvester executed to the Almeidas, as joint tenants, a deed to the property. Admit-tedly it was never recorded. There is nothing in the record to indicate that the Almeidas ever executed to Sylvester a reconveyance of the title which he transferred to them by this deed. Sylvester's contention below and before this court is that the conveyance given by him to the Almeidas was not absolute, but only intended as a mortgage. Sylvester testi-fied that he gave the Almeidas the deed as security for a loan of $200 representing part of the money originally paid by the Almeidas on their intended purchase of the property, the remaining portion having been repaid by him to the Almeidas. Sylvester further testified that the Almeidas were to return the deed when the loan was repaid; that the loan was repaid in January, 1942; that the Almeidas returned the deed to him. There is no writing between Sylvester and the Almeidas to evidence the alleged security agreement, nor is there any written evidence of the $200 debt alleged to have been owed by Sylvester to the Almeidas.

At the time of the conveyance to Sylvester, the latter knew of the existence of the judgment against the Almeidas. The record reveals that he was friendly with the Almeidas who lived in the house after Sylvester's purchase thereof, paying $25 monthly rent—the monthly payment on the purchase price was $24. Sylvester never gave Almeida "rent credit" on the alleged $200 debt, but, instead, accepted the rentals and also repaid the alleged debt.

Mr. Almeida testified that after he had paid the initial payment of $290 under his own contract of purchase he "put up" $110 more "to put $400 on the place." A receipt of the escrow holder shows that $100 was paid on the escrow account 65153 under date of September 23, 1941. That date is after the "withdrawal" of the Almeidas from the purchase negotiations; after Sylvester had taken over, in place of the

Almeidas, and also after the execution of the joint tenancy conveyance by Sylvester to the Almeidas.

 Sylvester maintains that there is no support in the record for the finding that the property had not been redeemed. The court's finding is justified as that finding is not based upon Kirkpatrick's proof of nonredemption, but upon Sylvester's and the Almeidas' failure to sustain the burden of proving redemption.

 The true subject of inquiry respecting the evidence hereinbefore set out is whether it can support a reasonable inference that the September 20, 1941, instrument from Sylvester to the Almeidas was a deed rather than a mortgage. While it is undenied that a deed absolute on its face, when given only to secure an obligation, will be interpreted as creative of a mortgage, the mere statements of Sylvester and Almeida cannot be conclusive on the matter. As said in 17 California Jurisprudence, section 41, pages 735, 739, ''Whether or not a deed absolute in form is a mortgage is a mixed question of law and fact to be determined from all the evidence, written and parol; and in determining it, all the facts and circumstances attending the transaction should be considered.'' Even though the testimony of Sylvester and Almeida that the deed was intended only as a mortgage is not contradicted by other specific testimony, the law is that surrounding circumstances could convince the trial court of the inherent unworthiness of such testimony, and he could resolve the issue contrary to their testimony. (*Staples* v. *Hawthorne*, 208 Cal. 578 [283 P. 67]; *Jenks* v. *Carey*, 136 Cal. App. 80 [28 P.2d 91]; *Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75 [172 P.2d 725].)

The trial court's finding that the Almeidas did have title on June 3, 1944, and that Kirkpatrick acquired it at the execution sale held on that date must be sustained. The fact that the Almeidas returned the deed of September 20, 1941, to Sylvester is immaterial in view of Civil Code, section 1058, which provides that ''Redelivering a grant of real property to the grantor, or canceling it, does not operate to retransfer the title.'' (See, also, 9 Cal.Jur. § 95, p. 210.) As there is evidence that the Almeidas really owned the property with record title only in Sylvester as a sham to prevent Kirkpatrick from reaching the property with his judgment, that portion of the judgment which decrees that Sylvester ''never

had and does not now have'' any interest in the property, is clearly supported by, and not against, the evidence, the findings or the law. The trial court was correct in its conclusion of ownership, and in restraining and enjoining Sylvester from making any future assertion of title.

Similarly, the trial court correctly enjoined the Almeidas from making any future assertion of right in the property. They maintain that under Code of Civil Procedure, sections 700 and 702, they had a year after June 3, 1944, namely, until June 3, 1945, in which to assert a right of redemption in the property sold on execution against them. They argue that rights are fixed as of the last day of trial, namely, May 28, 1945, and that it is immaterial that the original judgment is filed November 3, 1945, whereas the modified judgment is filed January 4, 1946. They cite no authority in support of their position that the judgment pronounced long after the statutory right of redemption had lapsed would have to preserve to them such right of redemption merely because the trial of the action was concluded six days before the statutory period closed. There is nothing in the record to indicate that the Almeidas ever attempted to exercise a right of redemption, nor do they accompany their present appeal by any statement that they ever intended or tried to redeem. Their contention, then, is completely and wholly technical, and they fail to show how the provision of the judgment which they now attack could possibly have prejudiced them. The inconsequential legal error may be disregarded.

There is no merit to the Almeidas' contention that the trial court erred in not proportioning the respective interests of Sylvester as record owner, and themselves as beneficial owners. The trial court's finding that the property belonged to the Almeidas with legal title only in Sylvester is equivalent to an apportionment of interests between Sylvester and themselves. In effect it states that Sylvester had no interest in the property.

On appeal, as during the trial, the Almeidas contend that John Almeida was improperly interrogated under Code of Civil Procedure, section 2055, over the objection of his spouse that he could not be examined ''for or against'' her without her consent, citing Code of Civil Procedure, section 1881. The trial court relied upon *Johnston* v. *St. Sure*, 50 Cal.App. 735 [195 P. 947], in overruling said objection.

In that case a husband and wife, among others, were defendants in an action to quiet title to realty. The husband disclaimed all interest in the property and set up title in his wife. When her deposition was taken the wife refused to answer questions propounded to her upon the ground that she was an incompetent witness under Code of Civil Procedure, section 1881. In a mandamus proceeding to compel her to testify, the court issued the writ, saying (pp. 737-738): ". . . the husband having expressly disclaimed any interest in this property, and having joined with his wife in the allegation that she alone was the real party in interest, he cannot now be heard to say that the testimony of his wife would be either for or against him." The wife in the present case, having filed a disclaimer, similarly is in no position to urge that her husband's testimony would be either "for or against" her. The argument that the testimony of the husband could be "for or against" her because it could affect the extent of Kirkpatrick's judgment under which she was liable, overlooks the fact that the subject of inquiry below was not the judgment, but the title to the property involved, and both the Almeidas filed a disclaimer of any claim of title to that property. Furthermore, the filing of said disclaimer raises serious doubts as to the Almeidas' right to appeal. (*Mono County Irr. Co.* v. *State,* 32 Cal.App. 184 [167 P. 199]; *Hinton* v. *Winsor,* 2 Wyo. 206; *Page* v. *Havens,* 9 Kan.App. 888 [60 P. 1096].)

The judgment is affirmed.

Peters, P. J., concurred.

A petition for a rehearing was denied May 27, 1947, and the following opinion was rendered:

THE COURT.—On May 16, 1947, the attorneys for appellants filed an affidavit in this court (without compliance with the Rules on Appeal relating to augmentation of the record) in which it is averred that during the trial of this case one of the attorneys for respondent stipulated that appellants could have 60 days after the judgment became final to redeem. The record reveals that the attorney merely offered such a stipulation. His offer was not accepted. It is further averred that on June 2, 1945, appellants paid to the proper constable an amount sufficient to redeem. The last day of trial was May 28, 1945, and there is nothing in the record to show that any

of these facts were called to the attention of the trial court prior to the entry of the modified judgment on January 4, 1946. Nothing said in the opinion heretofore filed should be interpreted to affect any rights based on facts not before the trial court. With this explanation both petitions for rehearing are denied.

Appellants' petition for a hearing by the Supreme Court was denied June 30, 1947. Traynor, J., voted for a hearing.