[Civ. No. 16598.   First Dist., Div. Two.   Feb. 15, 1956.]

O. H. HAGEN, Respondent, v. MANUEL R. SILVA et al., Appellants.

Machado & Machado for Appellants.

Bohnett, Hill, Cottrell & Bohnett and L. D. Bohnett for Respondent.

DEVINE, J. pro tem.†—Judgment on a complaint to quiet title having been rendered in favor of plaintiff, defendants husband and wife, who claimed to be holders of a promissory note and of a deed of trust on the property, have appealed.

†Assigned by Chairman of Judicial Council.

The issue in the case is whether or not full payment of the note was made by plaintiff, and this is to be decided by determining whether the person to whom payments amounting to the entire principal and interest were made, was the agent of defendants for the purpose of receiving these payments.

Plaintiff executed the note and deed of trust on March 30, 1943, to parties named Pine, and exactly one year later the note and deed of trust were assigned to appellants Manuel R. Silva and Rose M. Silva. The note was payable at the office of Wesley L. Pieper Company. One Gladys E. McCormick transacted business under the fictitious name Wesley L. Pieper Company. Plaintiff, who had made a few interest payments earlier, paid several years' interest on the note on January 18, 1950, and on January 20, 1950, he paid the entire principal, both payments being by check made payable to "Pieper & Co." On January 26, 1950, he made a payment which, by the terms of McCormick's receipt, was to cover interest for the month of January to the 26th, and the fee for recording a reconveyance. Plaintiff was then about 88 years old, was ill, thought he was about to die, and wished to clear up the debt. He made several demands for reconveyance, but was put off by McCormick, who misappropriated the money. It was not until 1953 that plaintiff learned, by his first direct contact with the Silvas, that remittance had not been made to them, and that McCormick had been arrested.

Mrs. Silva bought the note through McCormick, left the note at the Pieper Company, and, as she testified "it was to be the pay as it was before." She collected interest from time to time from McCormick. She had made loans to other persons through McCormick, but the dates of such loans do not appear.

McCormick became bankrupt, and no payment has been available from the bankruptcy proceedings.

Since one of two innocent parties must suffer, it must be decided whose agent McCormick was.

Almost all of the testimony which would tend to show that McCormick was the agent of defendants for collection was the testimony of Rose M. Silva, under section 2055 of the Code of Civil Procedure, given over objection by her counsel acting as counsel for her husband.

Appellants argue that appellant husband's objection to the admissibility of this testimony should have been sustained under section 1881, subdivision 1, of the Code of Civil Procedure, which provides, among other things, that a wife cannot be examined for or against her husband without his consent.

Husband and wife were defendants in the cause and, in answer to the complaint, alleged that they owned the note, that it was unpaid, and that they held the deed of trust.

█ In cases where one spouse alone is plaintiff or defendant, since necessarily the evidence sought to be introduced from the other spouse must be for or against the marital partner, it must be excluded. (*Marple* v. *Jackson*, 184 Cal. 411 [193 P. 940].)

█ When both spouses are parties defendant, but one of them has disclaimed (either expressly or virtually) any interest in property, the spouse disclaiming becomes a nominal, not a real party in interest, and cannot invoke the prohibition of section 1881, subdivision 1. (*Johnston* v. *St. Sure*, 50 Cal. App. 735 [195 P. 947]; *Schwartz* v. *Brandon*, 97 Cal.App. 30 [275 P. 448]; *Sylvester* v. *Kirkpatrick*, 79 Cal.App.2d 443 [180 P.2d 36].)

It has been held that where husband and wife are parties plaintiff, the testimony of either may be given without the consent of the other, on the ground of waiver of the incompetency. (*In re Strand*, 123 Cal.App. 170 [11 P.2d 89].)

Apparently, there is no California case in which both spouses are defendants, and in which there has been no disclaimer of interest by one of them, in which it has been decided whether or not either spouse may be examined without the consent of the other. In *Dean* v. *Superior Court*, 103 Cal. App.2d 892 [230 P.2d 362], this court held that consent of the husband was not necessary when the wife, who had been joined with the husband as a defendant in a personal injury case, her liability being predicated on her ownership of the automobile, was asked specifically about such ownership, but was not asked questions affecting *his* liability; and the court found it unnecessary to attack any broader question relating to privilege or incompetency to testify.

It seems to be unnecessary, on this appeal, to give an answer which would apply to every cause in which plaintiff chooses to name both spouses as defendants and causes each, perforce, to be an interested party. █ It is sufficient to say that in such a quiet title action as this, wherein plaintiff does not state in his complaint, and is not required to state, the nature of defendants' claims (*Hyatt* v. *Colkins*, 174 Cal. 580 [163 P. 1007]; *Kroeker* v. *Hurlbert*, 38 Cal.App.2d 261 [101 P.2d 101]), and in which defendants, in answer to the general allegation in the complaint that their claims are without merit, come forth in their answer with the assertion

of their claims, and with a prayer that the court declare their interest to the extent of the claimed indebtedness, they are in position akin to that of parties plaintiff as in the Strand case, *supra,* and have waived the benefit of section 1881, subdivision 1, of the Code of Civil Procedure.

Such an answer as filed by the defendants would, if the allegations were sustained by the evidence, entitle them to a judgment, even though no cross-complaint was filed, and even though affirmative relief was not asked. (*Wolf* v. *Gall,* 174 Cal. 140 [162 P. 115]; *Ridgway* v. *Ridgway,* 95 Cal.App.2d 46 [212 P.2d 6].) To permit defendants to assert their claim and at the same time to permit the husband to prevent questioning of his wife about that claim, if not "monstrous" (as was described the possibility of immunity from scrutiny of a transaction by which one spouse took property from another in alleged defraud of creditors, in *Tobias* v. *Adams,* 201 Cal. 689 [258 P. 588]) would at least be incongruous and unfair. Although, as appellants argue, the code section itself does not mention an exception in this situation, and an exception cannot be read into it (*Ayres* v. *Wright,* 103 Cal.App. 610 [284 P. 1077]), the benefits of the section may be waived, as in the Strand case, *supra,* and must be held to have been waived herein.

Considering, then, the testimony of Mrs. Silva together with that of plaintiff, we turn to the main question, whether or not the trial court's finding the note had been fully paid can be sustained.

█ The burden of proving payment, once the uncanceled note, which had not been returned to the payor, and the deed of trust were proved (and plaintiff himself introduced the evidence of his debt), was upon the plaintiff. (*Griffith* v. *Lewin,* 125 Cal. 618 [58 P. 205]; *Bank of Italy* v. *Bettencourt,* 214 Cal. 571, 577 [7 P.2d 174].)

█ Payment of a negotiable note is made in due course when it is made at or after maturity to the holder (Civ. Code, § 3169), and one who pays to someone other than the holder has the burden of proving that the person to whom he paid it was authorized by the creditor to receive payment (*Brainard* v. *Brainard,* 17 Cal.App.2d 520, 522 [62 P.2d 403]), or that there was ratification, or that the creditor is estopped to deny the agency.

It is admitted that McCormick was the Silvas' agent for the collection of interest. Mrs. Silva called at McCormick's

office to collect interest on the note, and did collect interest through McCormick several times. ▮ However, an agent's authority to collect interest does not, in itself, carry with it authority to collect principal. (2 C.J.S. 1279, § 107; Rest., Law of Agency, vol. I, § 71b; 21 R.C.L. 868.)

In California, this rule has found expression in the case of *Schomaker* v. *Petersen,* 103 Cal.App. 558 [285 P. 342], which holds that authority to collect interest does not establish agency to collect principal, nor does it give rise to an estoppel. It is true that in that case the purported agent had made but one authorized collection of interest, undertook to make a discount from the principal sum, and made the collection before maturity, but the decision is based not only on those facts, but also on the general proposition of law as stated above.

Circumstances added to the authority to collect interest may establish authority to collect principal. (2 C.J.S. 1279; cases collected in 111 A.L.R. 584 et seq.)

The circumstances in this case, in addition to the agency to collect interest, which are to be considered are: 1. that the note was made payable at the office of Wesley L. Pieper Company. 2. that in transactions with other persons McCormick was authorized by the Silvas to collect principal as well as interest. 3. that the note was left with McCormick, who had negotiated the loan, by Mrs. Silva.

▮ The fact that the note was made payable at the office where the check was delivered is of little importance. This simply appointed the place where the offer of performance might be made under section 1489, subdivision 1, of the Civil Code. The note did not state that it was payable to Wesley L. Pieper Company, but to the Pines, or order, and there was not an endorsement by the Pines in blank, but an assignment, on the back of the note, by the Pines to the Silvas. The combination of the three factors of authority to collect interest, payment to be made at the agent's office, and negotiation of the loan by that agent were held insufficient to show authority to collect principal in *Tilton* v. *Boland,* 147 Ore. 28 [31 P.2d 657].

The transactions in which McCormick was authorized by the Silvas to collect principal and interest on notes of other persons might have been helpful in showing, by circumstantial evidence, the extent of the agency in this case. There is no evidence, however, to show whether these transactions were earlier, concurrent with, or later than the Hagen ''payment.''

The "other transactions" were lumped together in a claim filed by the Silvas in the McCormick bankruptcy, with no reference to dates. It is quite possible that the other transactions were subsequent ones, and would have no probative effect as showing a general agency at the time in question.

Finally, there is the fact that the Silvas permitted McCormick, who had negotiated the loan, to retain possession of the note. There is no evidence that Hagen saw the note, or demanded its return or demanded to see it; to the contrary, his testimony is that after he signed it, he never saw it again.

The rule governing the permitted retention of the note by the agent who negotiated the loan is set forth in *Schomaker* v. *Petersen, supra,* at page 567 as follows: "5. To support the implication of authority to collect under the scrivener's rule, there must be the union of two elements—agency in making the loan and known possession of the *indicia* of indebtedness intentionally left in the negotiating agent's custody.

". . . Mere possession alone does not suffice. It is the possession, known at the time, which gives the appearance of authority."

It is the appearance of authority which is the basis for the rule that possession by the negotiating agent may give rise to the inference of authority to collect principal, and not the mere possession, unknown to the payor. (C.J.S. 1278; 2 Am.Jur. 128.)

In his unbusinesslike drawing of a check to Pieper Company, plaintiff did not, so far as the evidence shows, have any knowledge that McCormick possessed the note.

The evidence in the case as a whole was meager, and it may be that, with the question of evidence decided, a more thorough inquiry into the business relations of Mrs. Silva and McCormick may show an authority which, as the evidence now stands, cannot be held to have been established even by giving to the judgment the benefit of all reasonable inferences.

The judgment is reversed and the cause is remanded for a new trial.

Nourse, P. J., and Dooling, J., concurred.