[Civ. No. 23284. Second Dist., Div. Two. Feb. 25, 1959.]

BEATRICE N. De STACKELBERG et al., Appellants, v. LAMB TRANSPORTATION COMPANY (a Corporation) et al., Respondents.

Demler & Eckert, Edison J. Demler and Harry E. Westover for Appellants.

Ball, Hunt & Hart and Joseph A. Ball for Respondents.

HERNDON, J.—On July 20, 1955, at about 4:15 a. m., on Alameda Street in Los Angeles County, an automobile driven by Roy Nelson collided with a truck and trailer combination owned by Lamb Transportation Company. The four occupants of the automobile were seriously injured, and each sued Lamb Company on a theory of *respondeat superior* for the alleged negligent operation of the truck and trailer by Edwin Earl Robinson, Lamb's truck driver. The cases having been consolidated for trial, there was a judgment for defendants

entered on a jury verdict and two of the four plaintiffs, Beatrice de Stackelberg and La Verne J. Woodworth, have appealed. They contend that the trial court erred in the giving and refusal of certain instructions bearing upon the issue of their alleged contributory negligence. Since appellants contend that there was no evidence to support a finding of contributory negligence on their part or to justify any instruction on this theory of the defense, it will be necessary to recite the facts in some detail.

On the evening preceding the accident, appellants Mrs. de Stackelberg and Mrs. Woodworth, after a cocktail party at the latter's home, attended a dinner party in Los Angeles Chinatown. Later, they drove to a bar in Gardena where they were served alcoholic beverages. Still later, at about 1 a. m., appellants went to the Village Spa, a restaurant and bar on Lakewood Boulevard, where they met Roy Nelson and Harold Fair, police officers of the city of Compton. Mrs. Woodworth and Mrs. de Stackelberg both admitted having another drink at this last establishment, and soon thereafter, at about 2 a. m., appellants left with the officers to inspect a small boat at Los Angeles Harbor in which Fair was interested. Nelson drove the party to the harbor in a 1953 Chevrolet four-door sedan, a city-owned vehicle, assigned to him. The group boarded the boat for a cruise around the harbor. During the boat ride Fair produced a can of warm beer and gave Mrs. Woodworth a taste of it. After the boat ride, and at about 4 a. m., the party returned to the car and started home. Nelson was driving with appellant de Stackelberg beside him in the front seat, and appellant Woodworth beside Fair in the rear seat. At about 4:15 a. m. the vehicle was proceeding northerly on Alameda Street.

Alameda Street, in the area of the collision, is a four-lane highway, running north and south, unlighted, straight, level and paved. The area is in a 55-mile an hour zone. The night of the accident was dark and clear. The Lamb Company has a transportation yard on the east side of Alameda Street from which a private driveway leads to the paved shoulder. At the entrance to the highway there were boulevard stops erected for vehicles coming from the yard. On the night of the accident, Robinson was directed to take his truck and trailer to a loading point on Alameda Street about a mile south of the Lamb yard. The overall length of truck and trailer was 60 feet, and it was equipped with the variety of lights and reflectors characteristic of such large trucks. Robinson drove

from the yard to Alameda Street, where he testified he stopped and observed two cars to his left about 700 yards south. To the north, he observed another car stopped at a red signal. Robinson started the truck and trailer forward, making a left turn at a slow speed across Alameda Street. One of the two cars approaching from the south (to Robinson's left) was that driven by Nelson. The other vehicle was a small truck driven by George Aistrope, an eyewitness to the accident. Aistrope testified that he was driving north at a speed of 40 to 50 miles per hour when the Nelson car approached from the rear and overtook him, passing in the right-hand lane and then returning to the center lane. After Nelson had passed, Aistrope increased his speed to about 50 miles an hour. At about this time he saw defendant's truck come out on the highway, fully lighted. Aistrope testified that the truck proceeded slowly across the highway and that the cab had completed the turn and was west of the center lane of the highway when the Nelson vehicle collided with the rear wheels of the trailer. Aistrope fixed the point of impact at or near the center line of the highway, and he testified that at the moment of the collision the right-hand lane of the highway, northbound, was clear. He testified: that he was traveling about 50 miles per hour and was about 75 yards from the point of impact when the accident occurred; that he first began to slow down after the collision, and that he came to a stop in the Lamb driveway where he alighted from his car to render aid. The terrific force of the impact was indicated by the facts that the trailer was thrown across the highway, its wheels knocked from under it, and that the Nelson car was completely demolished.

The occupants of the Nelson car could give only fragmentary testimony as to the exact circumstances of the accident. Nelson testified that he was driving north on Alameda at about 50 to 52 miles per hour, and was asked: "Q. . . . As you approached the Lamb Yard just tell us what happened. A. An object shot out in front of me and I saw the truck and at the time I saw it there he had both the inside lane and the outside lane and the inside lane I was traveling at fully blocked. Q. Now, did you see the truck in motion? A. Yes, I did. Q. Did you see the truck at any time stop? A. No, I did not. Q. Did you see the truck at any time before it was on to the highway?" He testified that he had not seen the truck before this time.

· It was one theory of the defense that appellants' recovery

was barred by their own negligence in riding with Nelson knowing him to be intoxicated and it is on the question of Nelson's alleged intoxication that there is a substantial conflict in the evidence.

All of the passengers in the Nelson car admitted to having consumed alcoholic beverages on the night of the accident, but Nelson insisted that he had consumed only one drink, a bourbon and soda, at the Village Spa about two hours before the accident. Although there was testimony that Fair produced some beer during the boat ride, there was no direct evidence that Nelson had more than the one drink he admitted consuming. However, there is such substantial evidence of Nelson's intoxication that the jury had most reasonable grounds for disbelieving Nelson's testimony. Following the collision, at about 6 a.m., Nelson was examined and treated by Dr. Chauncey Dobson, a resident physician at the Harbor General Hospital in Torrance, for his substantial injuries. Dr. Dobson testified that in his opinion Nelson was "quite drunk at 6:30." Although the doctor did not perform a blood alcohol test, he testified that there was a strong odor of alcohol on Nelson's breath which could not be produced by just one drink; that Nelson's speech was slurred; that his movements were uncoordinated, and that "he [Nelson] was under the influence of alcohol" at 6:30 on the morning of the accident. On cross-examination, Dr. Dobson testified as follows: "Q. In order for you to find him drunk, intoxicated at 6:30 as to what it would have been at 4:00 o'clock, do you have any opinion? A. No, sir. Q. Could you even estimate, doctor? A. Yes, sir. Q. What would be your estimate? A. It would be a large amount. That would be my estimation. Q. You saw him in such a condition at 6:30 that you formed the conclusion that he was quite drunk at 4:00 o'clock, even if he had nothing to drink in those two or two and one-half hours? A. He was quite drunk at 6:30. Q. I beg your pardon? A. He was quite drunk at 6:30. Q. If he was quite drunk at 6:30, he would have been quite drunk at 4:00 o'clock, wouldn't he? A. Yes."

In addition to the testimony of Dr. Dobson, two witnesses who observed Nelson in the car immediately after the accident testified that his breath had a noticeable odor of alcohol.

■ Appellants contend that there was no evidence to justify instructions given by the court upon two aspects of the defense of contributory negligence: (a) relative to the circumstances under which a guest is required to protest against the obvious negligence of the driver; and (b) relative

to the effect of a guest accepting a ride, or continuing to ride, with a driver known to be intoxicated. Appellants argue: (1) that there was no evidence of erratic or negligent driving on the part of Nelson sufficient to suggest to his guests a need for protest or cautionary admonition; (2) that the evidence of Nelson's intoxication at the time of the accident was not adequate; and (3) that there was a complete lack of proof that appellants knew, or should have known, that Nelson was intoxicated.

A review of the evidence in conformity with the familiar rule (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Ashburn* v. *Miller*, 161 Cal.App.2d 71, 74 [326 P.2d 229]) reveals the complete lack of merit in these arguments. There was both direct and circumstantial evidence that Nelson's car was traveling at a speed which the jury reasonably could have regarded as obviously excessive and grossly negligent under the circumstances. The testimony of Dr. Dobson alone was clearly sufficient to support a finding that Nelson was intoxicated to a degree that seriously impaired his ability to operate an automobile. It is granted that for the instruction to be applicable it was necessary for the jury to find that appellants knew, or should have known, of Nelson's intoxication. (*Enos* v. *Montoya*, 158 Cal.App.2d 394, 401 [322 P.2d 472].) However, such knowledge may be inferred from circumstances and, in the light of the activities which preceded the accident, the jury had ample basis for inferring that appellants, who had been in the company of Nelson for over two hours, must have been aware of his inebriation. (*Cf. Kroplin* v. *Huston*, 79 Cal.App.2d 332, 340, 342 [179 P.2d 575]; *Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal.2d 480, 489-490 [55 P.2d 870].) There was other evidence from which the jury could have inferred that Nelson's ability to drive had been substantially impaired. The witness Aistrope, traveling some 75 yards behind Nelson's car, observed the brightly-lighted truck entering the highway, and had no difficulty in coming to a stop at the scene of the accident. From Aistrope's testimony it was reasonable to conclude that Nelson could easily have avoided the accident simply by turning into the right-hand lane which was unobstructed.

Thus, we readily conclude that the evidence clearly justified the giving of the challenged instructions. ■ Appellants themselves submitted requested instructions on both aspects of the theory of defense presently under discussion. The trial court gave appellants' requested instruction with reference to

the duty of a guest to protest against the obvious negligence of the driver. Thus, assertion of error in the form of this instruction would invoke the doctrine of invited error. (*Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 657 [320 P.2d 500]; see 4 Cal.Jur.2d 423, § 557.) However, we find no fault with any of the instructions given.

■ Appellants next contend that the trial court erred to their prejudice in denying an oral motion made during the trial to strike Robinson's answer to their complaints. Although the complaints filed by appellants named and identified Robinson as the negligent driver of Lamb's truck, they did not join him as a party defendant. However, it appears that Robinson was joined as a defendant in the complaints of plaintiffs Nelson and Fair. The only basis for appellants' claim of prejudice in this ruling was developed at a later stage of the trial, when plaintiffs called Robinson's estranged wife, who, according to an offer of proof, was prepared to give testimony favorable to plaintiffs. The offer of testimony was excluded as incompetent under Code of Civil Procedure, section 1881, preventing a wife from testifying against her husband without his consent. Appellants' theory is that the testimony of Robinson's wife would have been admissible if Robison were not a defendant in the action (*cf. Sylvester* v. *Kirkpatrick*, 79 Cal.App.2d 443, 451-452 [180 P.2d 36]), and that a litigant has the right to select the persons against whom he seeks to recover (*cf. Strauss* v. *Owens*, 148 Cal.App.2d 570, 574 [307 P.2d 81]). It is asserted that Robinson had no right to intrude himself as a defendant by filing answers to complaints in which he was not joined as a party.

These arguments are unavailing in the instant case for two reasons. In the first place, Robinson was clearly identified and designated as a party defendant in the consolidated actions by the terms of the pretrial conference order, which is a part of the record herein. The pretrial conference order supersedes the pleadings to the extent of any inconsistencies and controls the subsequent course of the case. (Rules for the Superior Courts, rule 8.8; *Baird* v. *Hodson*, 161 Cal.App.2d 687, 689 [327 P.2d 215].) In the second place, the complaints of all four plaintiffs named Robinson and stated primary causes of action against him; two of them joined him as a defendant. Certainly he was a proper party, and it would seem unquestionable that Lamb could have compelled his joinder as a "conditionally necessary party" under the provisions of section 389 of the Code of Civil Procedure.

Appellants' third contention is that the trial court erred in instructing the jury in the terms of BAJI Number 140, the familiar "looking and seeing" instruction.[1] While a similar instruction has been criticized as argumentative and as assuming a question of fact (see *Colbert* v. *Borland*, 147 Cal.App.2d 704, 709 [306 P.2d 53]), we hold that in the circumstances of the present case the giving of this instruction, even if it were to be considered erroneous, could not, with reason, be regarded as prejudicial (*Alarid* v. *Vanier*, 50 Cal.2d 617, 625 [327 P.2d 897]).

Finally, we have considered appellants' other criticisms of the instructions, including their rather general arguments to the effect that there was error in the refusal of certain "appropriate and helpful instructions" requested by them. We conclude that the jury was fully, fairly, and adequately instructed upon all applicable principles of law. (*Cf. Curland* v. *Los Angeles County Fair Assn.*, 118 Cal.App.2d 691, 699 [258 P.2d 1063].)

Affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied March 27, 1959, and appellants' petition for a hearing by the Supreme Court was denied April 22, 1959. Peters, J., was of the opinion that the petition should be granted.

---

[1] "General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either some part of such evidence is untrue or the person was negligently inattentive."