[S. F. No. 19252. In Bank. July 5, 1955.]

JOHN M. LYNCH, JR., a Minor, etc., et al., Respondents, v. JACK WAYNE BIRDWELL et al., Appellants.

Weinmann, Rode, Burnhill & Moffitt and Cyril Viadro for Appellants.

Evans, O'Gara & McGuire and E. James McGuire for Respondents.

SCHAUER, J.—In this action to recover for personal injuries resulting from an automobile accident, defendants appeal from an adverse judgment entered upon a jury verdict. We have concluded that defendants suffered no prejudice from various asserted errors upon which they rely, and that the judgment should be affirmed.

The minor plaintiff, John M. Lynch, Jr., was injured when an automobile in which he was riding as a guest and which was being driven by the minor defendant, Jack Wayne Birdwell, plunged off the highway while descending Mount Diablo. The action is based on alleged wilful misconduct of the minor defendant (Veh. Code, § 403), and was brought to recover both general damages of the minor plaintiff and special damages of his father, consisting of the costs of treatment of his injured son. Recovery is also sought against the parents of the minor defendant, who had signed and verified his application for a driver's license. (Veh. Code, § 352.)

There is evidence, although conflicting, sufficient to establish that the car went off the road because defendant driver with wanton disregard for the probable consequences of his conduct persisted after warnings in driving too fast down and around the sharp curves of the mountain road; that he entered the curve where the car finally left the road at 40 or 45 miles an hour; that nearer the top of Mount Diablo he had driven as fast as 58 or 60 miles an hour; that he was warned on the way down and before the accident occurred that he was going too fast, but instead of slowing down he laughed and speeded up.

Defendants first contend that since the action is based on a charge of wilful misconduct, the court erred to their preju-

dice in giving a lengthy jury instruction defining negligence,[1] "without making it clear that negligence was not an issue in the case." Following the instruction of which defendants complain, the court defined proximate cause to the jury, and then proceeded: "In a case as here presented, there is no legal presumption of wilful misconduct on the part of the defendant . . . [T]he mere happening of an accident, or the filing of a complaint and answer, or the fact that injuries have been sustained, raises no presumption of wilful misconduct . . ." The nature of direct and indirect evidence, of presumptions and inferences, and of expert testimony, was next explained. It was then stated that the minor plaintiff was a guest in the automobile and that "the host is not legally obligated to his guest to exercise ordinary care in the operation of the vehicle. The driver's only legal obligation to the guest is to refrain from being intoxicated and from wilful misconduct.

"No issue of intoxication being involved in this case, you may award damages to plaintiffs only in the event that you should find that said plaintiffs have suffered injury, of which some wilful misconduct on the part of the defendant . . . was a proximate cause.

"The words 'wilful misconduct' have a meaning in the

[1]Such instruction, given on the court's own motion, reads as follows:

"Negligence as that term is used in these instructions means, and is defined to be, the omission to do something which an ordinarily reasonable and prudent person guided by those considerations which usually regulate the conduct of human affairs, would have done, or the doing of something which such a person would not have done in the same situation.

"It is not absolute or intrinsic or to be measured in all cases in accordance with some precise standard, but always relates to some circumstance of time, place or person. Its application depends upon the situation and the knowledge of the parties, the attendant circumstances and the degree of care and prudence which the circumstances of the case reasonably impose.

"The conduct must be compared to that of an assumed person of ordinary prudence and must be considered with relation to all the circumstances attending the occasion which might reasonably be taken into consideration by such a person of ordinary prudence in determining what his conduct should be.

"The circumstances to be considered are those which the evidence shows may reasonably be supposed to have been known to such person whose negligence is in question and to have influenced his mind and actions at the time, and are not such circumstances which afterwards, in the retrospective light of the event, can be seen should have been known to him and should have influenced his conduct.

"By the term 'ordinary care' is meant such care, effort, diligence, and caution as would have been exercised by a person of ordinary sense or prudence under the same or similar circumstances as those disclosed by the evidence."

law, additional to that which they have in common usage. If we were to use the words in their ordinary sense, they would mean simply the indulging in wrongful conduct by conscious choice. Such conduct might consist of doing something that ought not to be done or in failing to do something that ought to be done. But in order to be a basis for liability to a guest under our law, the misconduct must be something more than intentional and wrongful; it must be done under circumstances which show either knowledge that serious injury to the guest probably will result, or a wanton and reckless disregard of the possible results.

"You will note from the foregoing that although wilful misconduct is a form of negligence [a patently erroneous concept hereinafter discussed], it is something more than negligence; more even than what might be called gross negligence. A guest may not recover against his host-driver for negligence, however it might be classified, unless that negligence amounted to wilful misconduct, and that means intentional, wrongful conduct, done either with knowledge that serious injury to the guest probably will result, or with a wanton and reckless disregard of the possible results. [Paragraph No. 42 of instructions.]

"In determining the question as to whether the defendant, JACK WAYNE BIRDWELL, conducted himself with knowledge that serious injury to the plaintiff, JOHN M. LYNCH, JR., would result from said defendant's conduct, proof of such knowledge does not have to be by direct evidence. You have a right to INFER that the defendant, JACK WAYNE BIRDWELL, had such knowledge if such an inference may reasonably be drawn from facts in evidence and if your judgment so directs.

"It follows, therefore, that if you should find that defendant was negligent, and if you should find that he intentionally did something that was wrongful and which was a proximate cause of injury to plaintiff, still a case of wilful misconduct is not established unless you further find that defendant's conduct was characterized by the element of wantonness as heretofore described. But if it was, then defendant is liable. [Paragraph No. 44 of instructions.]

"Said defendant JACK BIRDWELL's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that his conduct not only creates an unreasonable risk of bodily harm to the other,

but also involves a high degree of probability that substantial harm will result to the other person.

"In determining whether the circumstances in this case are sufficient to disclose implied knowledge on the part of the defendant, JACK WAYNE BIRDWELL, as to the probability of injury resulting to the minor plaintiff, JOHN M. LYNCH, JR., by reason of the conduct of said defendant, an external standard is applied. That is to say, it is not necessary that the defendant, JACK WAYNE BIRDWELL, himself have recognized his conduct as being extremely dangerous. It is sufficient that he knew or had reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct."

Although the record shows that defendants themselves proposed several refused instructions comparing negligence and wilful misconduct, there is no indication in the record as to whether the various instructions which were given were proposed by plaintiffs or by defendants or were given on the court's own motion. The parties did stipulate, when this case was before the District Court of Appeal, that the instruction set forth hereinabove in footnote No. 1 was given on the court's own motion and that instructions on the subject of speed, hereinafter discussed, were proposed by plaintiffs.

But showing the source of only a portion of the instructions given or requested is obviously insufficient to meet the burden assumed by an appellant; i.e., the burden of establishing error prejudicial to him. Error, it is elementary, will not be presumed in favor of reversing a judgment (*Brokaw* v. *Black-Foxe Military Institute* (1951), 37 Cal.2d 274, 280 [231 P.2d 816]; *Philbrook* v. *Randall* (1924), 195 Cal. 95, 104 [231 P. 739]; *Bacon* v. *Grosse* (1913), 165 Cal. 481, 490 [132 P. 1027]; *Cutting Fruit Packing Co.* v. *Canty* (1904), 141 Cal. 692, 695-696 [75 P. 564]; 4 Cal.Jur.2d 426, § 559, and cases there cited) and invited error cannot be complained of by the appellant (*Nevis* v. *Pacific Gas & Elec. Co.* (1954), 43 Cal.2d 626, 630 [275 P.2d 761]; *Jentick* v. *Pacific Gas & Elec. Co.* (1941), 18 Cal.2d 117 [114 P.2d 343]; see also 4 Cal.Jur.2d 420-424 and 3 Cal.Jur.2d 821, and cases there cited). As declared in *Vaughn* v. *Jonas* (1948), 31 Cal.2d 586, 596 [191 P.2d 432], in making up the record on appeal "Each instruction should be identified by a number and should indicate by whom it was requested or that it was given by the court of its own motion; on each requested

instruction the trial judge should endorse the fact as to whether it was given or refused or given as modified, with the modification, if any, clearly indicated." (See also 4 Cal.Jur.2d 101-102.)

As in the Vaughn case, the reporter's transcript here sets forth in the form of a single instruction, covering approximately 25 pages, a congeries of propositions of law which made up the entire charge given to the jury, and there is no indication as to who requested statement of any of the various legal principles contained therein. Thereafter there is set forth a group of "Instructions Requested by Defendants but Refused by the Court," each of which bears a number; in no other respect is any portion of the instructions appearing in the record designated by an identifying number or source.

■ Since the record fails to show who requested the instructions which were given it must be presumed by a reviewing court (except as to the matters covered by stipulation as hereinabove noted) that the instructions which for convenience we have designated as paragraphs 42 and 44 (and which compare negligence with wilful misconduct) were given at appellants' (defendants') own request. (See *Deevy* v. *Tassi* (1942), 21 Cal.2d 109, 124 [130 P.2d 389]; 4 Cal. Jur.2d 441-442, § 569, and cases there cited.) The most egregious errors in the instructions appear in those two paragraphs, in which the concepts of negligence on the one hand and of wilful misconduct on the other are extensively confused. ■ It will be noted, however, that the error in paragraph number 44 is mitigated by telling the jury that a case of wilful misconduct is not established by a finding of negligence plus a finding of an intentional wrongful act by plaintiff, unless the element of wantonness was also found to characterize defendant's conduct. ■ Although this instruction is far from being a model it tends to rectify some of the error already invited by defendants and its objectionable features cannot be complained of by defendants, who, we must presume, requested it. (See *Nevis* v. *Pacific Gas & Elec. Co.* (1954), *supra,* 43 Cal.2d 626, 630; see also 4 Cal.Jur.2d 422, 423, § 557, and cases there cited; 3 Cal.Jur.2d 820-821, § 276.) Also the jury were told that plaintiff was a guest in defendant's car and that a guest may not recover for negligence, but only for wilful misconduct. ■ Although the statements in paragraph number 42 that "wilful misconduct is a form of negligence," and that a "guest may not recover against his host-driver for negligence, however it might be

classified, unless that negligence amounted to wilful misconduct,'' erroneously suggested to the jury that negligence is included in wilful misconduct, whereas in truth ''the two types of behavior are mutually exclusive'' (see *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953), 40 Cal.2d 102, 120 [251 P.2d 955]; *Hawaiian Pineapple Co.* v. *Industrial Acc. Com.* (1953), 40 Cal.2d 656, 663 [255 P.2d 431]), nevertheless, since we must presume that defendants requested the instruction, it cannot be held to have prejudiced them. ■ Nor, inasmuch as the word ''negligence'' appeared in various of the instructions explaining to the jury the nature of wilful misconduct, was there error in defining the term to' them, especially since they were plainly told that negligence alone would not support a verdict for plaintiffs. (See *Burrell* v. *Southern Calif. Canning Co.* (1917), 35 Cal.App. 162, 166 [169 P. 405].) ■ The jury were cautioned that they were to consider all the instructions as a whole and to regard each in the light of all the others, and it must be presumed that they did so. (*Kimic* v. *San Jose-Los Gatos etc. Ry. Co.* (1909), 156 Cal. 273, 276 [104 P. 312]; *Zuckerman* v. *Underwriters at Lloyd's, London* (1954), 42 Cal.2d 460, 478-479 [267 P.2d 777].)

■ Defendants also complain of an instruction (stipulated to have been requested by plaintiffs) that ''excessive speed, under certain conditions, may amount to wilful misconduct.'' This statement, however, was immediately followed by the further instruction that ''all of the circumstances, including the speed at which the defendant . . . was driving, may be considered by you when determining the question of whether said defendant was guilty of wilful misconduct.'' Although it is of course true that the isolated act of driving at an excessive speed does not constitute wilful misconduct (*Robertson* v. *Brown* (1940), 37 Cal.App.2d 189, 193 [99 P.2d 288]; *Stacey* v. *Hayes* (1939), 31 Cal.App.2d 422, 427 [88 P.2d 165]; *McLeod* v. *Dutton* (1936), 13 Cal.App.2d 545, 549 [57 P.2d 189]), nevertheless, since the court's statement was modified by the phrase ''under certain conditions,'' and by telling the jury also that ''all of the circumstances, including the speed'' may be considered, no prejudice to defendants appears. As already shown, the jury were instructed on the essential elements of wilful misconduct.

Defendants next make various charges of prejudicial rulings of the trial judge as well as prejudicial conduct on the part of counsel for plaintiffs, all of which they contend denied them a fair trial. No merit appears in this contention.

First, no error is shown in permitting Mr. Bassett, Chief Ranger of Mount Diablo State Park for the past seven years, to testify that in his opinion, on the basis of the "skid marks" which he found on the road, the car "was already going sidewise before the brakes were applied." The witness testified that he had been a police officer in the city of Santa Barbara where he was traffic officer for two years and lieutenant of traffic for six years more; his duties included investigating all vehicle accidents in that city. He had made approximately 1,000 road tests to determine the length of "skid marks." As chief ranger he has charge of roadways in the park, including investigating accidents and observing "skid marks." Although he had not made speed tests for some twenty years, it was not with reference to speed that defendants complain he was improperly permitted to testify.

"It is for the trial court to determine, in the exercise of a sound discretion, the competency and qualification of an expert witness to give his opinion in evidence [citation], and its ruling will not be disturbed upon appeal unless a manifest abuse of that discretion is shown." (*Huffman* v. *Lindquist* (1951), 37 Cal.2d 465, 476 [234 P.2d 34, 29 A.L.R. 2d 485].) No such abuse appears here.

Besides plaintiff and the minor defendant, there were four other boys in the car, one of whom was plaintiff's brother. Of the remaining three, two of them testified for plaintiff and one for defendant. The incidental reference to insurance, made by the two boys who testified for plaintiff, provides no ground for reversal. The first reference was made by the witness on redirect examination, in response to a request to recount a conversation which occurred between four of the boys immediately after the accident, and the witness volunteered that one of the boys "said something about having good insurance," and one of the others "said something about the insurance is going to have to pay for everything and all." Defendant interposed no objection or motion to strike. Near the end of the trial, on cross-examination, the other boy who testified for plaintiff volunteered that defendants' insurance "had failed to pay off." Although defendants neither objected to nor moved to strike this testimony, they did immediately bring out by further cross-examination supplemented by questions from the court that the witness did not know "whether there's any insurance or not." In addition it may be noted that the trial court denied defendants' motion for new trial. There appears to have been no deliberate effort by

plaintiffs to elicit the fact of insurance and no prejudicial misconduct is shown by the incidental references to which defendants point. (See *Speck* v. *Sarver* (1942), 20 Cal.2d 585, 589-590 [128 P.2d 16].)

Early in the trial plaintiffs' counsel sought to introduce evidence of the prima facie speed limit on the Mount Diablo road, and argument was had before the jury, after which the court ruled that such a violation "probably would be negligence, but not necessarily wilful misconduct," refused to admit the evidence, and admonished the jury to disregard the discussion on the matter. Since a prima facie speed limit "is a factor proper for consideration with other pertinent factors, in determining the issue of wilful misconduct" (*Anderson* v. *Newkirch* (1950), 101 Cal.App.2d 171, 178 [225 P.2d 247]), no error to defendants' prejudice is shown.

During closing argument counsel for plaintiffs commented on the fact that defendants had objected, because of changed circumstances, to having the jury view the scene of the accident. The court thereupon again read to the jury a stipulation between the parties concerning the condition of the road at the time of the accident, and changes to it thereafter, and stated that "The Court has ruled that this stipulation takes the place of viewing the scene of the accident." No prejudice appears to defendants from this occurrence in view of the court's prompt comments to the jury. Nor would the reference in plaintiffs' closing argument to the fact (although not in evidence) that a doctor had examined the minor plaintiff on behalf of defendants but had not been called to testify prejudice defendants, since no claim is made concerning the extent of the injuries or that the verdict is excessive with respect thereto.

Defendants' final contention is that the judgment in favor of the minor plaintiff is erroneous because it includes an award of $3,354.16, the stipulated amount of special damages sustained by plaintiff father, and in that it awards $1,645.84 against the parents of the defendant minor over and above the award against the minor. The court instructed the jury that the liability of defendant parents was joint and several with that of their minor son for any claim against him and that "your award must be in the same amount as against all," with the exception that any verdict against the parents must not exceed the statutory limit of $5,000 (Veh. Code, § 352), even though a greater or additional amount might be awarded against the son. Further instructions were that the claims of the minor plaintiff and that of plaintiff father should

be considered as separate and distinct from each other, that any verdict in favor of the father should cover only the special damages consisting of the costs of treatment, that any verdict in favor of the minor plaintiff should include compensation for various items of damage mentioned by the court but not including the treatment costs. Forms of verdict were provided for and read to the jury, who returned a verdict by simply filling in the amounts which had been left blank on one of such forms. As so completed, the verdict reads: "We, the Jury . . ., find for the plaintiff JOHN M. LYNCH, JR. [minor], and against the defendants and assess said plaintiff's damages against defendant JACK WAYNE BIRDWELL [minor] in the sum of $13,354.16 and against defendants C. W. BIRDWELL and GERALDINE BIRDWELL [parents] in the sum of $1,645.84.

"And we further find for the plaintiff JOHN M. LYNCH, SR., as and for his special damages herein and against the defendants and assess said plaintiff's damages against JACK WAYNE BIRDWELL in the sum of $0.00 and against defendants C. W. BIRDWELL and GERALDINE BIRDWELL in the sum of $3,354.16."

Judgment was thereupon entered (see Code Civ. Proc., § 664), following the language of the verdicts, that the minor plaintiff recover from the minor defendant the sum of $13,354.16 and from the defendant parents the sum of $1,645.84 *and* that plaintiff father "recover for his special damages of and from" the parent defendants the sum of $3,354.16.

Although the record indicates that the blank forms of possible verdicts were shown to counsel for both sides before the case went to the jury, and that when the jury returned with its verdict the court conferred at the bench with both counsel concerning it, defendants do not suggest and the record does not show that they offered any objection on either occasion. Under such circumstances it appears to be the settled rule that they have waived any right to complain as to its form. (See *Crowe* v. *Sacks* (1955), *ante,* pp. 590, 597 [283 P.2d 689]; *Brown* v. *Regan* (1938), 10 Cal.2d 519, 523 [75 P.2d 1063]; *Broome* v. *Kern Valley Packing Co.* (1935), 6 Cal.App.2d 256, 261-262 [44 P.2d 430]; *Brand* v. *Norris* (1953), 121 Cal.App.2d 367, 369 [263 P.2d 456].)

Defendants assert, nevertheless, that they do not object to the form of the verdict, but only that the award in favor of the minor plaintiff "was not supported by the evidence

since it included an award of special damages . . . although such an award could have been made only in favor of his father and in fact was made in'' the father's favor. Nothing in the record necessarily establishes, however, that the $13,354.16 award in favor of the minor plaintiff did include the special damages. It may further be noted that the sums awarded against the defendant parents ($1,645.84 in favor of the minor plaintiff and $3,354.16 in favor of his father) exactly total the $5,000 limitation imposed by Vehicle Code, section 352, as to which the jury were instructed, and plaintiffs have not objected to the division thus made. Likewise, the sums awarded the minor plaintiff ($13,354.16 against the minor defendant and $1,645.84 against the defendant parents) total $15,000, which so far as appears from the record the jury may have intended as general damages to the minor plaintiff.

In reliance upon *Aynes* v. *Winans* (1948), 33 Cal.2d 206 [200 P.2d 533], defendants also urge that an objection to a judgment entered upon the verdict can be made for the first time by a motion for new trial. Although the present record shows the making by defendants of such a motion and the denial thereof by the court, there is no showing that the form or amounts of either the verdict or the judgment were mentioned during the proceedings. Further, in the cited case, in which the judgment entered by the court after construing the verdict was reversed and remanded for a new trial on the issue of damages alone, the court was dealing with the statutory liability of a motor vehicle owner under the imputed negligence provisions of section 402 of the Vehicle Code. That section provides, in favor of the owner, that upon ''recovery of judgment, recourse shall first be had against the property of . . . [the] operator . . . [who has been] served,'' and also that an owner against whom recovery is had is subrogated to all the rights of the person injured and may recover from the operator the amount of any judgment and costs recovered against the owner. No such provisions in favor of parents, who, as here, are held liable under section 352 by reason of signing and verifying a minor's application for a license, are contained in that section, and consequently no prejudice to them from separate verdicts and judgments, as was held to exist in the Aynes case, is shown.

For the reasons stated, the judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.