[Civ. No. 8798.   Third Dist.   Jan. 21, 1957.]

MICHAEL COLBERT, a Minor, etc., et al., Appellants, v. JOSEPH C. BORLAND, Respondent.

IRMA JEAN BORLAND, Respondent, v. GILES B. COLBERT, Appellant.

John T. Taheny, Taheny & Taheny and Stammer, McKnight & Barnum for Appellants.

C. Ray Robinson, Richard M. Darby, Hansen, McCormick, Barstow & Sheppard and William B. Boone for Respondents.

VAN DYKE, P. J.—Mildred Colbert was killed when an automobile in which she was riding was struck by an automobile driven by defendant and respondent, Joseph Borland. Plaintiff Giles Colbert, her husband, was driving the car in which she was riding. Plaintiff Michael Colbert, also riding in the Colbert car, was 8 years of age and was her adopted son. Giles Colbert sued for personal injuries which he sustained. Michael Colbert sued for damages for the death of his mother and for personal injuries which he sustained. Joseph Borland filed a cross-complaint against Giles Colbert for Borland's injuries. Irma Borland, his wife, who was riding with him, filed a separate action against Giles Colbert for damages for her personal injuries. The cases were consolidated for trial with the following result: Giles Colbert received nothing. Joseph Borland received a verdict for $7,500. Irma Borland received a verdict of $1,200. Giles Colbert has appealed from both judgments and from the judgment that he take nothing. Michael Colbert, the minor,

was denied recovery in his action against Joseph Borland, and he appeals from that judgment.

The accident occurred at the intersection of United States Highway Number 99 and County Road Number 18½E in Madera County. Highway 99 runs north and south and is a divided highway consisting of two northbound, and two southbound, traffic lanes with a dividing strip approximately 60 feet wide. The county road intersects the southbound roadway of Highway 99 on the westerly side and opposite its entrance there is a crossover to and from the northbound lanes. The county road does not continue east. Giles Colbert, hereinafter called Colbert, stopped his car on the right shoulder of the northbound lanes near the crossover and after consulting a map, crossed the northbound lanes, entered the crossover, and approached the southbound lanes, at which point he said he stopped. He testified he stopped about 6 feet east of the southbound roadway and looked northerly to his right; that he saw a car approaching about 800 feet away in the westerly southbound lane; that he started across the southbound lanes, then again looked to his right, for, as he put it, 200 or 300 feet and within that distance saw no car approaching; that he was going about 2 or 3 miles an hour at that time; that he never saw the Borland car before the collision. It appears to be without material dispute that when the Colbert car was in a position where its front end was about 10 feet west of the pavement of the southbound lanes it was struck broadside by the Borland car which had swerved to its right. Borland testified that as he approached the crossover going south the road was straight, clear, and that nothing obscured his view of the road or the crossover; that when he was 1,000 feet north of the crossover he passed two cars and after passing them remained in the easterly lane until he saw the Colbert car; that he passed the two cars at a speed of 60 to 65 miles an hour, which speed he maintained until he applied his brakes to avoid collision with the Colbert car; that he first saw the Colbert car when its front end was about at the east edge of the southbound lanes; that it was then moving; that he was then from 200 to 300 feet from the Colbert car; that he then blew his horn and continued to blow it; that at the same time he turned toward the westerly lane; that he first applied his brakes lightly for an instant and then applied them hard; that he first applied his brakes lightly because he expected Colbert to stop when he heard the horn; that he estimated Colbert's speed at 5 miles

an hour and observed no change at any time; that he started turning to the right before he pressed his brakes at all; that he had first intended only to retard his speed because he thought Colbert would stop. In connection with Borland's testimony it may be stated here that there was evidence which is not materially in dispute that the Borland car laid down skid marks for 180 feet angling westerly across the southbound lanes of the highway to a point where it struck the Colbert car, and that there were marks indicating sliding action for an additional 58 feet where the Borland car came to a rest with its front end in the ditch along the roadway. One H. A. Bland testified as follows: That he was going south on Highway 99 at a speed of 55 to 60 miles an hour; that when he was north of a sign which was 385 feet back from the crossover, the Borland car passed him on the left; that when the Borland car was about 50 to 100 feet past the sign he saw the stop lights flash on, the back of the car raise up and the front lower, indicating, as he said, that the brakes had been applied; that he heard no horn sounded; that when he saw the stop lights flash on, the Colbert car was several feet east of the west line of the southbound lanes, and he estimated its speed to be five to ten miles an hour.

The minor appellant, Michael Colbert, first contends that Borland was guilty of negligence proximately causing the collision as a matter of law, and that therefore a retrial should be ordered as to him on the question of damages alone. This contention cannot be sustained. Under the facts in this record the question of the negligence of both drivers presented issues of fact for the jury to resolve. It was an issue of fact as to which car had the right of way at the time when the Colbert car proceeded to cross the southbound lanes. As is usual in such cases where distances of moving vehicles from a given point are to be proven, the evidence presents conflicts and consists mainly of estimates made by witnesses after the emergency is over, based upon recollections of things hastily viewed at the time. The jury could have found that Colbert stopped just east of the southbound lanes, looked to the north, and that at that time traffic was 800 feet or more back up the road and far enough away so as not to constitute an immediate hazard, thus justifying him in beginning to cross the south-bound lanes, and at the same time casting upon Borland the duty of yielding the right of way to him. On the other hand the testimony of Bland and Borland would support a finding by the jury that before Colbert began to cross the southbound

lanes, Borland's car was around 300 feet distant and approaching at a speed of 65 miles an hour; that it did present an immediate hazard, so that Colbert ought to have yielded the way to Borland. The jury could also have found that Borland, even having the right of way, could have, and should have stopped his car or so have retarded its speed as to avoid the collision. Borland's own description of his conduct affords support for such a conclusion, for though seeing the Colbert car just entering the lane on which he was traveling, Borland blew his horn and thought Colbert would stop. He kept on blowing his horn, turned to his right to pass around the Colbert car, first applied his brakes only lightly, then hard when he concluded Colbert would not stop. It was then too late. True, we are discussing emergency actions, but Borland's description of his actions is more easily referred to calculated risk than to emergency conduct. It is unnecessary to elaborate or to discuss the evidence in more detail. We hold that the question of the negligence of each of the drivers was for the jury.

What we have said disposes also of the contention in support of Colbert's appeal that the judgment against him ought to be reversed as unsupported upon the issue of his negligence.

Both appellants contend that the court committed error in admitting the testimony of the expert witness Harper, who testified on behalf of Borland. This assignment of error cannot be sustained. Harper had majored in physics at the California Institute of Technology, and for nearly 20 years had acted as a consulting physicist. He had for years headed the technical laboratory of the Pasadena Police Department; had done extensive investigation of automobile accidents with relation to speed and stopping distances and had conducted many experiments in such investigation. Over objection he was permitted to testify that in his opinion the average distance required to stop a Cadillac automobile of the type and character driven by Borland on a cement surface was 75 feet at 50 miles per hour; that 60 miles an hour would require 270 feet of braking plus 66 feet of reaction time or a total stopping distance of 336 feet; and that 65 miles an hour would require a total stopping distance of 392 feet. The objection is based upon the proposition that the witness had never examined the pavement at the point of the accident, did not know its condition as of the time of the accident, did not know the braking efficiency of the Borland car, had never made tests with a 1949 Cadillac such as Borland's, had never

himself made a test with a 1949 Cadillac at 65 miles an hour or more. There were other but like objections as to his qualifications to give opinion evidence at the trial. The jury were properly instructed that qualified experts could give an opinion on questions in controversy at a trial to assist the jury in deciding questions to be determined by them; that the jury was not bound to accept such opinions as conclusive but should give to them the weight to which they found them to be entitled, and could disregard the opinions if it found them to be unreasonable. With the qualifications of the witness Harper, it was not error to permit him to express his opinion in those matters as to which he testified. He neither told the jury nor could he have been considered by them as telling them just what was the total stopping distance of Borland's car driven by Borland. They understood that he was giving them estimates based on averages within his experience and training, safeguarded by tolerances wide enough to take in the probabilities with respect to Borland's car at the time and place of the accident. It would be seldom indeed that an expert could express an opinion if he was required to have knowledge of all of the factors that go into the length of time that a certain automobile can be stopped by a certain driver under circumstances existing at the instant of an accident. These things are well understood by juries, and they can be trusted to make proper allowances in using the information afforded by the opinion of an expert witness on such issues. We find no error in permitting the testimony of the witness Harper.

Appellants both contend that the court erred in giving two instructions on the subject of the duty to look and to see. One instruction told the jury that: "If there is evidence to the effect that just before a collision a driver looked in the direction of an automobile but did not see the automobile, and if there is also evidence that the automobile was in plain sight, then the conclusion follows that either some part of that evidence is not true, or the driver was negligent in failing to keep a proper lookout for automobiles." The other instruction told the jury it was as much negligence to look and not to see what was in plain sight as not to look at all, and then went on to say that if Giles Colbert did not use his powers of observation as a reasonably careful person would have done he was guilty of negligence. Referring these instructions to the evidence as to the care with which Giles Colbert exercised his powers of observation, we recall that

Giles Colbert testified that before he entered the southbound lanes he looked to his right and saw an automobile 800 feet away. He did not see the two cars following that automobile and it appears that in all probability he did not see Borland's car because Borland's car was trailing the other two at that moment, although it later passed the other two and became the lead car as the three cars approached the intersection. Nevertheless, Borland's car was in plain sight when Colbert looked. Under such circumstances whether looking without seeing Borland's car was negligent was a question of fact for the jury and it was error to tell them that looking without seeing was negligence as a matter of law. (*Plato* v. *Snyder,* 12 Cal.App.2d 88 [55 P.2d 255]; *Leader* v. *Atkinson,* 49 Cal. App.2d 265 [121 P.2d 759].) Under the circumstances existing here the conclusion would not necessarily follow either that Colbert lied when he said he looked or that he lied when he said he looked and did not see Borland's car; or that there is any necessary inconsistency in his testimony that he looked and did not see Borland's car. It was equally improper under the circumstances here to tell the jury that it was as much negligence for Colbert to look and not to see the Borland car as it was not to look at all. This is easily illustrated from the facts here. Colbert was looking to ascertain whether or not there was any car approaching so close as to constitute an immediate hazard to his proposed crossing of the southbound lanes. The jury could conclude that he could do this by considering the distance to the lead car even though he did not see the Borland car which was also in plain sight. But we do not think that the giving of these instructions constituted prejudicial error. They are of argumentative type and tell the jury little if anything that they do not know without being told. We do not think that the verdict of the jury could either have been produced or measurably influenced by the instructions.

Both appellants contend that the court erred in giving left turn instructions. The court read to the jury section 540 of the Vehicle Code as it stood at the time of the accident at which time it provided that the driver of a vehicle intending to turn at an intersection where traffic was permitted to move in both directions on each roadway entering the intersection should approach for a left-hand turn in that portion of the right half of the roadway nearest the center line thereof, passing to the right of such center line where it enters the intersection and after entering the intersection the

left turn should be made so as to leave the intersection to the right of the center line of the roadway being entered. The court also read to the jury section 544 providing that no person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal continuously during the last 50 feet traveled before turning and that signals given by hand and arm should be given from the left side of the vehicle by extending horizontally the hand and arm beyond the side of the vehicle. The jury were also informed that a violation of these provisions was presumptively an act of negligence, and in the absence of legal excuse or justification constituted negligence *per se*. Appellants claim it was error to give any instruction whatever with relation to turning for the reason that "Borland testified that he never saw the Colbert car until it had actually crossed the easterly shoulder and was actually entering the southbound traffic lanes" and therefore anything Colbert may or may not have done with regard to signaling a turn or with respect to the point from which he commenced his turn or relative to the length of time he maintained the turn signal could not be a proximate cause of the accident or have any bearing on the respective rights of the parties; in other words, appellants claim that, although the portions of the left turn sections of the code given were abtractly correct in point of law, the error lay in there being no applicability to the facts of the case; that, therefore the instructions were misleading. " 'Intersection' is the area embraced within the prolongation of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways, of two highways which join one another at approximately right angles. . . ." (Veh. Code, § 86.) Applied to the scene of the accident here, this means that the area from the point where the county road entered the southbound lanes of the highway to the point where the lateral boundary lines of the county road prolonged reached the easterly edge of the northbound lanes of the highway was the intersection area. It was the entire area entered and used by the Colbert car as it proceeded north and turned to accomplish an entrance upon the county highway. The jury were not required to accept the testimony of Colbert that he pulled off onto the right-hand shoulder of the northbound lanes and stopped before turning into the crossover and proceeded on to the southbound lanes. They could, if they thought proper, infer that he approached

the intersection in the northbound lanes and made the turn into the crossover and should have signaled his intention to do so. He testified that he did signal his turn but again the jury were not compelled to accept that part of his testimony. The jury could have concluded that at 2 o'clock in the afternoon of the June day his signal would have been visible to approaching traffic had he given it for the distance and in the position required by the statute and that approaching traffic would thus have had its attention alerted to the intended turn in the intersection. Even though drivers may have, as Borland and Bland testified they did, missed seeing the actual turn, yet had the signal been given it might have caught their eyes and given them information which otherwise they missed. We think there was sufficient applicability to the case to justify the court in giving the admittedly correct left turn instructions and that error cannot be predicated upon the court's having done so.

▇▇▇ Michael Colbert, the minor, complains of the court's giving the following instruction: ''The burden is upon each plaintiff in these cases to prove the affirmative of his case by a preponderance of the evidence. Therefore, you may not speculate as to whether any conduct on the part of either defendant was a proximate cause of the accident or of any one of plaintiff's injuries or damages, and if the evidence leaves these things a matter of conjecture *or doubt,* then that plaintiff has not sustained the burden of proof required of him under the law as against that defendant.'' (Italics ours.) The error in this instruction is so obvious as to require little comment. Concerning a similar instruction, the court said in *Greenleaf* v. *Pacific Tel. & Tel. Co.,* 43 Cal.App. 691 [185 P. 872]:

''. . . To what avail are the instructions as to the sufficiency of a preponderance of the evidence to support a verdict, and as to its efficacy if it produces unprejudiced conviction in their minds, when followed by the explicit direction that the degree of certainty indicated must not only be beyond a reasonable doubt, but must not admit of any doubt at all? Even in a criminal case, requiring the minds of the jurors to be satisfied beyond a reasonable doubt, this instruction would be erroneous. That it must be considered prejudicial, under the state of the evidence here, there can be no question.''

▇▇▇ It may be observed that the attorneys for appellant Giles Colbert also asked the court to give this same instruction and that Giles Colbert's criticism of the instruction is, there-

fore, within the rule of invited error.  However, Michael Colbert was represented by attorneys of his own, and they did not request the instruction, and the rule of invited error cannot be applied to him.

Respondents argue also that ''If the jury was under the impression that to find for the plaintiff it must find beyond all doubt the elements of his case, then the jury did, in fact, find beyond doubt that the appellant in this case [Giles Colbert] was negligent, and that the respondent, Joseph C. Borland, was free from negligence. Since Joseph C. Borland was not negligent Michael Colbert could recover nothing.'' The argument is not sound. Applying the instruction to the several situations presented by the cases we find the jury saying: Borland has satisfied us beyond doubt that Giles Colbert's negligence was a proximate cause of his injuries. He has borne his burden of proof. Giles Colbert has not satisfied us beyond doubt that Borland was contributorily at fault, and so has not borne his burden as to that defense. We are in doubt as to Borland's fault. Being so, Michael has failed to bear his burden of proof as plaintiff in his action. So we award him nothing.

The judgment against plaintiff and appellant Giles Colbert and in favor of respondent Borland and the judgment against Giles Colbert and in favor of Irma Borland are affirmed. The judgment against appellant Michael Colbert is reversed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied February 20, 1957, and the petition of respondent Joseph C. Borland for a hearing by the Supreme Court was denied March 20, 1957. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.