[Civ. No. 5367.   Fourth Dist.   Mar. 28, 1957.]

HENRY  C.  NORMAN,  Respondent,  v.  DON  E.  TULLY
et al., Appellants.

Baker, Palmer, Wall & Raymond and Robert L. Raymond for Appellants.

Lerrigo, Thuesen, Thompson & Thompson and Eckhart A. Thompson for Respondent.

MUSSELL, J.—This is an action for damages for personal injuries sustained by plaintiff in an accident which occurred on June 11, 1954, at about 10:30 p. m., at a point approximately one-half mile north of Grapevine Station on United States Highway 99, and involved three northbound truck and trailer combinations. United States Highway 99, at the point of collision, is a four lane asphaltic concrete highway and is divided by a concrete and steel barrier. This part of the highway is known as the ''Grapevine grade,'' which is 6 miles long and has a 6 per cent downgrade for northbound traffic.

Plaintiff Henry C. Norman was driving a truck and trailer north, towards Bakersfield. He was traveling approximately 18 miles per hour and overtook a truck and trailer which was being driven northward at a speed of about 12 miles per hour. Norman decided to turn into the inner traffic lane to pass this truck and trailer. He looked in his mirror to see if anything was behind him and to see if it was clear. There were no vehicles visible to his rear and he then put out his arm signal and pulled out to pass the other truck. When he was pulling around it, and the two cabs were about even, his equipment was struck from the rear by a tractor truck and trailer owned by defendant Tully, then being driven by defendant

Clawson. The Tully tractor and trailer, at the time of the accident, was traveling between 50 and 60 miles per hour. It was loaded with cantaloupes and oranges and the equipment, in all, weighed about 72,000 pounds.

Clawson told an investigating highway patrol officer that he was driving north at about 30 miles per hour on the Grapevine when his brakes became hot and ''faded out on him'' and he told plaintiff at the scene of the accident he ''didn't know the hill or guessed he came off too fast.'' Both defendants testified that the brakes on their equipment had faded out and would no longer stop the truck and trailer some time before they passed the Grapevine Station, and that they traveled from three and one-half to four miles after the brakes failed, before the accident.

Officer Donald Barr, of the California Highway Patrol, testified that he had been stationed at Lebec on the Grapevine grade for three years and patroled the grade daily; that he had observed many trucks going down the grade and had investigated numerous accidents where trucks went out of control; that from time to time he had followed trucks going down the grade and out of control; that the grade is one of the most dangerous in California; that there are two signs posted along the highway where the Grapevine starts that state ''that it is a six per cent downgrade and trucks use low gears''; that these signs are approximately 4 feet high and 8 feet wide and the lettering thereon is reflectorized so they will be picked up very clearly by lights at night; that the barrier dividing the north and southbound traffic lanes is constructed of steel and concrete; that it is rounded so that a truck or car can rub the barrier without going over it into the other lane and it is engineered so that it will throw them back into the traffic lane; that it will stop a truck or car at certain speeds and that he had seen trucks stop by deliberately using this barrier, and in one instance had observed a truck, traveling 30 miles per hour, which stopped by using the barrier; that the barrier has many black marks caused by trucks using it to stop; that he had discussed with truckers, and had made a study, as to what speeds were safe on that particular grade; that he had investigated many accidents on it and stated that in his opinion ''20 miles per hour, on a loaded truck, is as fast as the hill should be negotiated.''

The jury returned a verdict in favor of plaintiff in the sum of $8,000 and defendants appeal from the judgment. The first contention of appellants is that the only evidence

upon which the jury could predicate its implied finding of negligence was the improperly admitted opinion evidence of the witness Barr. He testified in this connection that in his opinion ''20 miles per hour on a loaded truck is as fast as the hill should be negotiated,'' and it is argued that it was prejudicial error to admit this evidence for the reason that the witness was not qualified as an expert. We are not in accord with these contentions.

■ There is substantial evidence in the record, in addition to the testimony of Officer Barr, from which the jury could reasonably infer that defendants were negligent in failing to keep their truck and trailer under control, in failing to maintain adequate brakes, in failing to keep the truck in a low gear so that its operation could be controlled, and in failing to use the barrier as a means of stopping or reducing the speed of their equipment. ■ '' 'It is the duty of the driver of a motor vehicle operating the same on a public street to be vigilant at all times keeping a reasonable lookout to possible danger to himself and others and to keep the vehicle under such control that to avoid a collision, he can stop as quickly as might be required of him by eventualities that would be anticipated by an ordinarily prudent person in like position.' '' (*Reich* v. *Long*, 97 Cal.App.2d 657, 660 [218 P.2d 589].) In the instant case the highway was posted with signs warning truck drivers to use low gears and defendants were required to have adequate braking equipment. (Veh. Code, § 670.) It was within the province of the jury to determine whether defendants were negligent in failing to use a proper gear in descending the grade involved and in failing to keep their equipment under proper control. ■ No prejudicial error appears in the admission of the testimony of Officer Barr relative to the safe maximum speed. He had investigated many accidents on the grade in which trucks were out of control. He had followed trucks down the hill and had patroled the area daily. In *Lynch* v. *Birdwell*, 44 Cal.2d 839, 849 [285 P.2d 919], it is said: '' 'It is for the trial court to determine, in the exercise of a sound discretion, the competency and qualification of an expert witness to give his opinion in evidence (citation), and its ruling will not be disturbed upon appeal unless a manifest abuse of this discretion is shown.' (*Huffman* v. *Lindquist* (1951), 37 Cal.2d 465, 476 [234 P.2d 34, 29 A.L.R.2d 485].)'' No such abuse appears in the instant case.

In *Zelayeta* v. *Pacific Greyhound Lines,* 104 Cal.App.2d 716, 726, 727 [232 P.2d 572], it is said:

"Thus, expert testimony is admissible or not depending upon whether the subject matter is within common experience or whether it is a special field where the opinion of one of skill and experience will be of greater validity than that of the ordinary juryman. . . . It is equally clear that cases may occur where the opinions of trained experts in the field on this subject will be of great assistance to the members of the jury in arriving at their conclusions. In such cases a traffic officer who has spent years investigating accidents in which he has been required to render official reports not only as to the facts of the accidents but also as to his opinion as to their causes, including his opinion, where necessary, as to the point of impact, is an expert. Necessarily, in this field, much must be left to the common sense and discretion of the trial court. (*Nolan* v. *Nolan,* 155 Cal. 476 [101 P. 520, 132 Am.St. Rep. 99, 17 Ann.Cas. 1056] ; *Lacy Mfg. Co.* v. *Gold Crown Mining Co.,* 52 Cal.App.2d 568 [126 P.2d 644].)"

The second argument presented by appellants is that the court erred in instructing the jury on the doctrine of res ipsa loquitur, in that it failed to instruct that the doctrine does not apply if the accident was due to any voluntary action or contribution on the part of the plaintiff. However, it does not appear from the record before us that the defendants offered an instruction on the subject, and where, as here, the refusal to instruct is urged for a ground of reversal, it was incumbent upon the defendants to request and offer a proper instruction. (*Estate of Dopkins,* 34 Cal.2d 568, 575 [212 P.2d 886].) In *Fedler* v. *Hygelund,* 106 Cal.App.2d 480, 485-486 [235 P.2d 247], a truck was being driven by appellant down a grade at a speed between 30 and 35 miles per hour. Appellant applied his brakes and discovered they would not hold and the truck proceeded downgrade out of control, until it turned over, injuring the respondent. The court said:

"We think from the facts related that the question of Rippin's negligence was for the jury to determine and that their determination is supported by substantial evidence and by the reasonable inferences which they could have drawn therefrom. Indeed, the jury could have considered that because the truck had been for some time and was at the time the accident happened under the exclusive control of Rippin and because ordinarily trucks do not run away downgrade unless the one having the control of the truck has been negli-

gent, Rippin had in some way failed to exercise due care. Such facts constitute circumstantial evidence from which an inference of want of care may be drawn. In short, the doctrine of res ipsa loquitur was applicable to the situation portrayed by pleadings and the evidence here."

The court further stated, at page 487:

"It is true that respondent did not ask the trial court to instruct the jury upon the doctrine of res ipsa loquitur, but that does not mean that when we search the record to determine whether or not it supports the verdict we can ignore the presence of the inference simply because the jury were not instructed upon the matter. The doctrine is grounded upon common observation and common sense, and, whether instructed or not upon the matter, the jury is competent to draw the inference if it desires to do so."

In *Seneris* v. *Haas,* 45 Cal.2d 811, 823 [291 P.2d 915], it is said that the conditions to be met before the doctrine may be applied are that the accident or injury must be of a kind which ordinarily does not occur in the absence of someone's negligence; that it must be caused by an agency or instrumentality in the control of the defendant; and that it must not have been due to any voluntary action or contribution on the part of plaintiff. It was also there held: "In order that a plaintiff be entitled to the benefit of the doctrine of res ipsa loquitur, he need not exclude every other possibility that the injury was caused other than by defendant's negligence" and that the court was of the opinion in that case that the jury, under appropriate instructions, should have been permitted to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur were present.

In *Simmons* v. *Rhodes & Jamieson, Ltd.,* 46 Cal.2d 190, 195 [293 P.2d 26], it is held that plaintiff may properly rely upon the doctrine of res ipsa loquitur even though he has participated in the events leading to the accident if the evidence excludes his conduct as the reasonable cause. Here, the jury was instructed that before plaintiff could avail himself of the doctrine, he must prove by a preponderance of the evidence that no intervening injury to his truck occurred and that the instructions on the doctrine of res ipsa loquitur were directed to the issue of the cause of defendants' truck going out of control. ■ The jury's implied finding that plaintiff's conduct was not a contributing cause of the accident is supported by his testimony that he changed lanes when he was

approximately 300 feet from the point of collision; that he looked in his rear view mirror and noticed no unusual conditions to the rear of his truck; that he could see approximately 200 yards to the rear, and gave a signal before turning. Under these circumstances the trial court's instructions on the doctrine of res ipsa loquitur were properly given to the jury on the issue of the cause of the defendants' truck going out of control.

The third and final contention of appellants is that the court erred in permitting hearsay testimony in the examining of Dr. Doyle. The doctor testified on cross-examination that the testimony he gave as to the plaintiff's present condition was based on his lawyer's advice as to such condition. Thereafter, the doctor was permitted, on redirect examination to testify as to the information received by him and stated that he had received a copy of another doctor's consultation. It is not claimed that the damages awarded plaintiff for his injuries were excessive and we find no reversible error in the admission of the doctor's testimony.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 22, 1957.