[Civ. No. 23671. Second Dist., Div. Two. May 28, 1959.]

DENVER C. WALLER, Respondent, v. SOUTHERN CALI-
FORNIA GAS COMPANY (a Corporation), Appellant.

Overton, Lyman & Prince and Fred S. Lack, Jr., for Appellant.

Harney, Drummond & Dorsey for Respondent.

ASHBURN, J.—A jury awarded plaintiff $50,000 as damages for injuries received in an automobile accident. Defendant appeals from the ensuing judgment and from an order denying its motion for judgment notwithstanding the verdict. Its main contentions are that plaintiff was guilty of negligence as a matter of law, that defendant as matter of law was free from negligence, that grievous error was committed in receiving opinions of an expert witness who finally expressed an opinion as to how the accident happened.

A collision occurred in the immediate vicinity of the intersection of Cahuenga Boulevard and Victory Boulevard in the San Fernando Valley. Cahuenga, about 45 feet wide, runs north and south and has two northbound lanes and one southbound. Victory, 74 feet wide, runs northwest and southeast and intersects Cahuenga at an angle of about 45 degrees. The intersection is a major one with four traffic lights. The most easterly lane of Cahuenga is apparently intended for right-turning northbound vehicles, for there is an island just north of the southeast corner of the intersection so placed that right-turning traffic goes between that corner and the island. A white line divides the second and third lanes of Cahuenga, counting from the east. The normal lane for northbound vehicles turning to the right would be the most easterly one.

On the morning of June 26, 1956, at about 10:55 a.m., defendant's 1948 Chevrolet half-ton pickup truck was northbound in the middle lane of Cahuenga, the one next the white line, and plaintiff was following it, driving a 1947 Mercury sedan. The vehicles collided and the right rear corner of the truck came into contact with the left doors of the sedan. Plaintiff's left arm was practically torn off in the accident. He fell out of his car and it went across Victory, jumped the curb and stopped on a lot at the northeast corner of the intersection.

■ The pretrial order stated plaintiff's contention to be: "That defendant brought the truck to a sudden and abrupt stop, forcing plaintiff to swing to the right to avoid striking the rear of the truck, and that there was a pipe or some other similar material protruding to the right and to the rear of the truck, and that said pipe or similar material, did not have any flags or other warning devices thereon; that, as a direct and proximate result of defendant's negligence, plaintiff's left arm came in contact with the pipe or other similar material and he was dragged or thrown out of his car." This order was made more than a month before the trial. By the time that hearing started plaintiff's counsel had evolved a new theory, namely, that the truck, without giving any signal, had backed into plaintiff's car after the truck had overshot the mark where it should have turned to the right and while it was getting into position to make a right turn. Plaintiff had testified upon deposition four months before the trial that the truck had stopped suddenly and he turned right in an effort to avoid it. At the trial he endeavored to follow his counsel's lead, saying: "Q. Do you remember anything else before the accident? A. Only coming—only him coming toward me and me swerving to the right trying to avoid him." Also: "Q. During this two-mile stretch that you had been following the truck, you say, how far behind the truck did you stay? A. I'd say 150 feet or so, something like that. Q. When you had gotten within a block of the scene of the accident, had you closed that distance up some, or had you—— A. Well, he closed the distance up, helped close the distance up, when he was backing up. That is the reason that I tried to swerve to avoid him, because I wasn't paying much attention to the truck until I saw it in front of me like that." But he was restrained by his oath and on cross-examination testified: "Q. I believe you stated on direct examination it was coming at you. You don't know if the truck was moving backwards? A. I don't know if it was moving backwards or not. I know that all I had time to do was just to swerve my car to the right." Also: "Q. It's not your testimony now, Mr. Waller, that that truck was backing up when you hit it? A. I don't know. Q. Then, you are not testifying it wasn't? A. No. Q. It was stopped when you ran into it; isn't that correct? A. I don't know that either. Q. You know it was stopped, don't you? A. It may have been stopped." In the light of the testimony just quoted plaintiff's statements made on direct examination certainly did not constitute substantial evidence that the truck backed into his car.

Defendant's driver, Charles E. Logue, Jr., testified that the truck was stopped at the crosswalk at the time of impact and was thrown forward 10 to 15 feet. Two eye witnesses, Mr. Pashby and Mr. McGrath, testified to the same effect. They were in a northbound United Parcel service truck; plaintiff had passed them on the right, swinging over in front of them and into the same lane as defendant's truck. Pashby said that that vehicle was stopped at the time of impact, south of the crosswalk, and after the accident was halfway across it. McGrath said that defendant's truck was stopped at the corner and after the accident was in the crosswalk. Los Angeles Police Officer, Fred S. Schott, arrived at the scene about 20 minutes after the accident and made the customary police investigation. He expressed the opinion that defendant's truck was stopped at the time of the accident.

Officer Schott fixed the point of impact at the center of the dirt and debris on the street, approximately 39 feet south of the south curb of Victory Boulevard and 22 feet west of the east curb of Cahuenga. This means in the center lane, not the one for right-turning. The officer made a diagram at the scene; it shows the truck at the south line of the crosswalk. The map in evidence (Exhibit 12) scales a width of about 17 feet for the crosswalk measured along a north-south line; the balance of the 39 feet fairly represents the length of the truck, say 20 feet, and a 2-foot distance between its front and the south line of the crosswalk. The truck is thus placed where Logue, Pashby and McGrath said it was.

Logue testified that he had no intention of making a right turn, that his business was to the left. His route extended both east and west of Cahuenga and he said he did not know whether his orders were for locations east or west of the intersection, but he added: "I know I had to turn left. That is the direction I was going. I don't know the direction of the house I was setting forth." Under prodding from plaintiff's attorney Mr. Bradley, who was defendant's superintendent of customer service in the San Fernando Valley division, found and produced all of Logue's unfinished orders for the day of the accident and in each instance they required him to go to the west and south of the intersection.

 There is no evidence that Logue had any occasion to turn right or that he intended so to do. Respondent claims that the evidence of Mrs. Edith Barron affords support for such an inference. She was the operator of a restaurant on the

south side of Victory about 200 feet from the scene of the accident; was busy waiting on customers when she heard the crash. About 15 to 20 minutes afterward she went to the scene and saw defendant's truck which she placed near a cement embankment located on the Robert Hall property on the west side of Cahuenga, which point was designated as B 1 and coincided with the location at which Officer Schott had located it, saying it was headed south some 120 feet south of the crosswalk. Mrs. Barron then placed the truck in the center lane of the street, immediately opposite the place where both Officer Schott and Mr. Bradley had located it. On redirect examination she added that debris on the street was more or less spread out from B 2 (her location of the truck in the center lane) up to where plaintiff was lying in the street, which would be more than 120 feet away. From this respondent's counsel would deduce the inference that the accident took place some 120 feet south of the intersection. ■ But the mere presence of scattered debris does not fix the point of an impact. ■ Only one who possesses expert qualifications can express an opinion as to point of impact. (*Cf. Zelayeta* v. *Pacific Greyhound Lines,* 104 Cal.App.2d 716, 723, 727 [232 P.2d 572] ; *Ribble* v. *Cook,* 111 Cal.App.2d 903, 906 [245 P.2d 593] ; *Stuart* v. *Dotts,* 89 Cal.App.2d 683, 686-687 [201 P.2d 820].) ■ Moreover, Mr. Bradley and Officer Schott each arrived 20 minutes after the impact and the truck had been moved at that time and there is no reason to believe that Mrs. Barron arrived before its removal. The skid marks began considerably north of the place where Mrs. Barron located the truck. There is nothing in her testimony that can be characterized as substantial evidence that defendant's truck was headed for a right turn or was backing at any time.

■ Plaintiff called as an expert witness Mr. Robert E. Snyder, a mechanical engineer who has had much experience in the analysis of automobile accidents. He testified to familiarity with the type of truck involved in the accident and said it would have to be 60 feet back from the intersection in order to make a right turn from the east lane or 70 feet for a turn from the center lane.[1] This evidence was received over defendant's objection that it was irrelevant and immaterial because there was nothing in the record to support the assumption of an intended right turn. The witness placed two stickers

[1]The transcript at this point is a bit obscure but the stickers placed by the witness upon the map show this is what he meant.

upon the map which was before the jury and there they remained throughout the trial, just as if they represented actual positions of the truck. This could only serve to confuse and mislead.

This assumption of a potential right turn was wholly unwarranted by any evidence then or thereafter in the record other than the expert's opinion. And the assumption of a prospective right turn by the truck was the sole basis for any inference that the truck was backing and thus ran into plaintiff's sedan. Without a right turn there could be no possibility of a backing by defendant's truck. But on the assumption of such an intended turn the expert witness proceeded to develop the theory of plaintiff's attorney that the truck backed into plaintiff's car.

This witness had examined the intersection a few days before the trial and was familiar with the photographs in evidence showing the damage to the two vehicles. On this basis, plus certain hypothetical questions, he expressed his opinions. Appropriate objections were made as his testimony progressed. The questions assumed that no tires had been blown out, although there was no evidence on that subject other than the photographs which do not fully support the assumption. It was further assumed that the brakes of the Mercury were applied 30 feet south of point of impact and laid down 30 feet of skid mark leading up to that point (which facts are in evidence). On this basis the witness said that *if* it was a one-wheel mark it would work very little diminution in speed of the car; that if traveling 20 miles an hour (25 miles was the lowest estimate of any witness) and *if* the other wheels were not skidding, the car would lose 2 to 3 miles per hour. Assuming a speed of 25 miles (warranted by the record) and a diminution of three to four miles (not supported by any testimony), and the Mercury going 22 miles at impact, the physical damage caused thereby was said to work a diminution of speed of five miles an hour. The witness then said the impact was a very light one, an inference which the photographs do not support. Based on *all* the foregoing hypotheses Mr. Snyder opined that the Mercury was going 15 to 18 miles at the time of impact. Then he said that if an automobile makes a right turn the rear wheels will follow inside and further to the right than the front wheels, hence, if the front wheels clear an object (the truck) so will the rear of the vehicle, and that there can be no impact with the side of it unless it makes a side skid

toward the truck or the truck backs into it. The witness ruled out any side skidding and expressed the following opinions: "Q. So the only other way it could happen then, assuming the front end of vehicle No. 2 misses vehicle No. 1, is to have vehicle No. 1 backing into vehicle No. 2 at that point; correct? A. Yes. In the absence of a skid on the part of vehicle No. 2 which would rotate into it, if the front corner misses, the only other way that it can strike at that point is to have the other vehicle move in on it. Q. Is there anything about any of these pictures which is inconsistent with the theory that that truck was backing up? . . . THE WITNESS: No, I don't find anything inconsistent with that at all. I have looked them over carefully and I don't find anything inconsistent." Thus we have an expert expressing an opinion upon the ultimate fact of how this accident happened, and it was based upon a cumulation of assumptions (some not supported by any evidence) which have no pertinency at all except as they rest upon the gratuitous one that the vehicle was backing to get into position for a right turn.

 While there is no ironclad rule that an expert cannot express an opinion upon the ultimate question in a case, the Supreme Court said in *People* v. *Wilson*, 25 Cal.2d 341, 349 [153 P.2d 720] : " 'We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . . Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in.' "

 As a general rule such opinions upon the ultimate issue should not be received in automobile accident cases. Some of the reasons are well stated in *Fishman* v. *Silva*, 116 Cal. App. 1, 3 [2 P.2d 473] : "It is needless to add, as in all such cases, there is presented a wide field for argument, the main theme of which is physical facts and the so-called immutable laws of physics. Contentions based on these foundations are usually not convincing, strange as it may seem, for the simple reason that in partisan presentation there is an ever-present temptation to forget essential facts which do not fit in. For instance, where it is argued that where there is a contact of two bodies in a given position, the direction of

the applied force will control the position of the bodies after the impact, any rule or law, in the abstract, will be found of little value when we have the additional factors of each body in motion and controlled by independent agencies. Experience has shown the futility of attempted demonstration in accident cases; there are too many varying factors. Among these variants we may class indefinite rate of speed, condition of the highway, judgment or lack thereof in the drivers, a direct blow or a glancing one, and the balance or equilibrium of each car at the time of impact." *Moniz* v. *Bettencourt,* 24 Cal.App.2d 718, 725 [76 P.2d 535]: "It is claimed by appellants the court erred in excluding proffered testimony of expert witnesses, offering to show that at the moment of impact the semitrailer was to the east of the center of the highway. This they were attempting to do by computing the time it would take for the grain to fall from the broken sacks, the course of the trailer after damage to the axles, etc.; in other words, trying to reconstruct by expert testimony what had happened. Courts look with disfavor upon this type of testimony upon the ground that it is impossible to establish all of the necessary elements such as the reaction of the human mind under a certain set of circumstances; the impossibility of having complete knowledge of the exact speed, course of the wind, if any, and force of the impact." *Williams* v. *Gurwitz,* 99 Cal.App.2d 801, 803 [222 P.2d 673]: "It is elementary that it is within the province of the jury to determine which party, if either, was negligent and which party, if either, violated the right of way rules. Such a matter is not the subject of expert testimony and neither a police officer nor any other witness should be asked whether he had reached a conclusion as to which party violated the right of way or to state such conclusion if he had arrived at one." Volume 32, Corpus Juris Secundum, section 522, page 220: "Accordingly, no matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture; in other words, the factual foundation for the expert opinion must not be nebulous." To the same effect, see *Moore* v. *Norwood,* 41 Cal.App.2d 359, 366 [106 P.2d 939]; *Shafter* v. *Evans,* 53 Cal. 32, 33; *Pacheco* v. *Judson Mfg. Co.,* 113 Cal. 541, 546 [45 P. 833]; *Johnston* v. *Peairs,* 117 Cal.App. 208, 216 [3 P.2d 617]; *Rudat* v. *Carithers,* 137 Cal.App. 92, 96-97 [30 P.2d 435]; *Linde* v. *Emmick,* 16 Cal.App.2d 676, 686 [61 P.2d 338]; *Dougherty* v. *Milliken,* 163 N.Y. 527 [57 N.E. 757, 759-760, 79 Am.St.Rep. 608];

*Swink* v. *Colcord* (10 C.A.), 239 F.2d 518, 520; 19 Cal.Jur.2d, § 313, p. 44; 38 A.L.R.2d Annotation, pp. 13, 47, 51.

The soundness of this view is illustrated by the situation at bar. Mr. Snyder, viewing the photographs, said the impact was very light. The jurors, looking at the same exhibits, properly could conclude that it was quite heavy or it could not have inflicted the damage there shown. The witness rested his ultimate opinion upon the absence of sidewise skid or brush marks. The ordinary juror would be quite competent to draw the inference that when the sedan ran into the truck the impact was heavy enough to cause it to bounce to the right and for that reason leave no brush marks. The theory that an arcuate skid mark spells inability of the middle of the Mercury to hit the corner of the truck if the front wheels pass it, presupposes a mild contact and the jurors well could conclude that that condition did not exist and that plaintiff's sudden turn at the last second in order to avoid the truck precipitated the side of his car against the corner of the truck, causing the whole Mercury to bounce or fly through the air to the right.

We do not consider plaintiff's cited cases to be opposed to the views just expressed. (*Zelayeta* v. *Pacific Greyhound Lines, supra,* 104 Cal.App.2d 716, 723, 727; *Norman* v. *Tully,* 149 Cal.App.2d 530, 532-534 [308 P.2d 875]; *Lynch* v. *Birdwell,* 44 Cal.2d 839, 849 [285 P.2d 919]; *Wells Truckways, Ltd.* v. *Cebrian,* 122 Cal.App.2d 666, 671, 676-678 [265 P.2d 557]; *Enos* v. *Montoya,* 158 Cal.App.2d 394, 398-399 [322 P.2d 472]; *Colbert* v. *Borland,* 147 Cal.App.2d 704, 708-709 [306 P.2d 53].) They involve substantially different factual situations which, so far as they present ultimate questions of fact, constitute nothing more than permissible departure from the general rule above stated.

We hold that prejudicial error was committed in the case at bar. There was no factual basis for the assumption of an impending right turn of the truck and hence no predicate for the further assumption of a backing truck; the stickers placed on the map to represent the positions the truck *might* have occupied, *if* it was to make a right turn, were misleading; the hypothetical questions put to the witness incorporated facts which were not in evidence; the final explanation of the accident invaded the province of the jury because it dealt with inferences which they were competent to draw and the subject matter did not lie exclusively in the field of an expert. "The opinions of experts are admitted in

matters which are not within the common experience of men so that the special knowledge of a person of skill and experience in the particular field may enable him to form an opinion, where men of common experience would not be able to do so. . . . The ultimate question to be determined in every case in which expert testimony is tendered is whether the case is one outside of the common experience of men so that a person of training and experience by reason of his superior knowledge is better able to reach a conclusion from the facts." (*Manney v. Housing Authority,* 79 Cal.App.2d 453, 459, 460 [180 P.2d 69].)

The error is of such nature and magnitude that we are of the opinion "that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error," and hence a miscarriage of justice follows. (*People v. Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Defendant's appeal from the denial of its motion for judgment *non obstante* is governed by the same rules as one taken from a nonsuit or a directed verdict. (*Estate of Arnold,* 16 Cal.2d 573, 581 [107 P.2d 25]; *Devens v. Goldberg,* 33 Cal.2d 173, 177 [199 P.2d 943]; *Champion v. Bennetts,* 37 Cal.2d 815, 820 [236 P.2d 155].) But we must take the record as we find it. We cannot strike or disregard any evidence favorable to the prevailing party merely because it was erroneously received. (*Non-Refillable Bottle Co. v. Robertson,* 8 Cal.App. 103, 105 [96 P. 324]; *O'Connor v. Hooper,* 102 Cal. 528, 529 [36 P. 939]; *Wright v. Roseberry,* 81 Cal. 87, 91 [22 P. 336]; *Gregg v. Western Pac. R. R. Co.,* 193 Cal. 212, 216 [223 P. 553].) Aside from other questions the presence in the instant record of Mr. Snyder's opinion as to how the accident happened precludes a reversal of the order denying the motion for judgment *non obstante.*

The judgment is reversed. The order denying motion for judgment notwithstanding the verdict is affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied June 25, 1959, and respondent's petition for a hearing by the Supreme Court was denied July 22, 1959. Gibson, C. J., and Peters, J., were of the opinion that the petition should be granted.